MAGGIE MEANS, Administratrix of Taylor Means, v. THE CAROLINA
CENTRAL RAILROAD COMPANY.

(Decided April 24, 1900.)

*Negligence—Contributory Negligence—Fellow Servant—
Superior—Right to Discharge—Risk Assumed—Con-
ductor—Brakeman—Motion to Nonsuit Under Acts
1897 and 1899—Charge of the Court—Act of 1796,
(Code, Sec. 413).*

1. The defendant company, which ran a mixed local freight and pas-
   senger train regularly between designated places, on schedule
   time, soliciting travel, and with growing business, is guilty of
   negligence in not having a conductor, but requiring an engineer,
   or some subordinate under him, to perform the additional duty.

2. An engineer, in charge of a train, with power of appointment and
   discharge, is not the fellow servant of a brakeman, but his
   superior, or vice principal.

3. Such engineer, who required a brakeman to collect and bring him the
   passenger tickets, without giving him opportunity to return
   safely to his post, leaving him to scramble back over the top of
   the train in motion, at night, in which effort he fell from the
   train and was killed, is guilty of negligence for which the defend-
   ant company is responsible.

4. A brakeman, who at the command of his superior, performed the
   duties of conductor, assumed only the ordinary risk attendant
   upon the duty, and was not responsible for the extra hazard to
   which he was exposed, and by which he lost his life.

5. The trial Judge who stated to the jury that there were phases of
   the case apparently admitted by the defendant's counsel, and if
   not, to be passed upon by the jury, involving negligence, did not
   violate the Act of 1796, The Code, sec. 413. The uncontradicted
   facts would have warranted a still more emphatic statement as to
   negligence.

6. Acts of 1897 and 1899 relating to motions to nonsuit now enable a
   defendant, as matter of right, should the motion be refused, to
   introduce evidence; formerly it was matter of discretion of the
   Court to allow it, or not.

MEANS *v.* RAILROAD.

CIVIL ACTION for damages for alleged negligence in occasioning the death of Taylor Means, intestate of plaintiff, tried before *McNeill, J.,* at October Term, 1899, of MECKLENBURG Superior Court.

This case was before the court at February Term, 1899, and is reported in 124 N. C., 574. The evidence is about the same as on the former trial. Briefly, there was evidence tending to show that the company ran a daily mixed freight and passenger train between Charlotte and Rutherfordton—stopping at regular stations on schedule time. The train had no conductor—his duties were usually performed by the engineer in charge, and sometimes by the intestate of plaintiff, Taylor Means, a brakeman, by his direction. On the night of December 4, 1894, at Crouse's Station, Taylor Means was directed by the engineer to collect the tickets and bring them to him. This was done; but the train being in motion, his only way to get back to his post was over the top of the cars; in making the attempt, he fell and was killed.

The jury found that there was negligence; no contributory negligence; and awarded $300 damages. Judgment accordingly for plaintiff. Defendant appealed.

The exceptions are adverted to in the opinion.

*Messrs. Osborne, Maxwell & Keerans,* and *McCall & Nixon,* by brief, for plaintiff, appellee.

*Messrs. Burwell, Walker & Cansler,* for appellant.

FURCHES, J. This case is before us for the third time, as may be seen in 122 N. C., 990, and 124 N. C., 574. The facts stated in this appeal are substantially the same as when here last (124 N. C., 574), and for that reason it is not necessary for us to restate them.

The plaintiff's intestate was killed before the passage of

the Fellow Servant Act of 1897 (chap. 56, Private Acts), and is governed by the law as it existed before its passage. The train that killed the intestate was composed of freight cars and a passenger coach used for the accomodation of the travelling public. It was run on regular schedule time, and did a considerable passenger business. It was under the control and management of John Hall, who was both engineer and conductor, and the intestate was one of the employees composing the crew. His employment was graded as that of brakeman, and his duties were to act as a brakeman, and also to attend the "shanty" coach, keep it in order, keep up fires, and, when directed to do so by Hall, to collect the passenger fares. Hall had the right to employ the hands composing his crew, the right to discharge them, and had the right to discharge the intestate, Means, and the intestate knew this.

On the night the intestate was killed at a station on the defendant's road, called "Crouse," it is in evidence, offered by the plaintiff, that Hall ordered the intestate to collect the passenger fares and bring them to him. This was denied by the defendant. The plaintiff also offered evidence to the effect that after the train had started, the intestate rushed forward with something in his hand and said, "Let me by, I have to take these tickets to Mr. Hall." It is also in evidence that the intestate got on the moving train and delivered the tickets to Hall; and that by the time the intestate got to Hall and delivered the tickets the train was moving too fast for the intestate to get off the train and get on again at the rear end, where his duties as brakeman were; or if so, not without great risk and danger.

The train moved on for a short distance when a jar was felt; the train slowed up, and stopped, and Hall came back inquiring for "Means," saying he was killed, he felt the jar. They went back and found his mangled body, cut in twain,

one half on the outside of the iron rail, and the other half inside.

It is not certainly known how the accident occurred. But upon examination, the glass of the intestate's broken lantern was found on a flat car next to the tender; and it is supposed that, in trying to make his way back over the train after delivering the tickets to Hall, he fell between the tender and the flat car, and was run over and killed. This we think, fairly presents the case on appeal.

There are a great number of exceptions in this case, and thirty-nine assignments of error—presenting probably different shades of phases, in which the able counsel of the defendant, from his standpoint, is able to see more merit than we are. They have all been examined and considered, but it could hardly be expected that we should discuss each one of these assignments in the opinion of the Court. We will therefore have to consider them together as, we think they bear upon and affect the merit or points involved in the case.

One of the principal matters discussed was the nature of the employment of the intestate, his duties, and assumption of risk. We do not propose to pursue this line of discussion further than to say that if it was embraced in the contract of employment that it was an extra duty required of a brakeman, and if he assumed any risk above that of a brakeman, it was only such risk as would ordinarily exist in collecting the fares of passengers and taking them to Hall.

Another exception is that the Court violated the Act of 1796 (Code, sec. 413), in what he said as to the duty and liability of the defendant, in not having a conductor on this train. It seems to us—the facts upon this part of the case being the same as they were when the case was here before—that the Court might have gone further than it did, and have told the jury that the defendant was guilty of negligence in

not having a conductor on this train. And if this is so, it can not be contended that what the Judge did say was in violation of the statute.

At the close of the plaintiff's evidence, showing the death of the intestate, the manner of his death, the fact that the road was being operated at that time by Hall as engineer and without a conductor—Hall acting as conductor—that Hall was the vice-principal of the intestate, having the right to discharge him from the defendant's service; that he had ordered the intestate just before leaving Crouse's Station to collect the tickets and bring them to him; that the intestate had collected and carried them to Hall, and when he delivered them to Hall the train was running too fast for the intestate to get off and on again with safety; and that Hall did not stop or slow up the train to enable the intestate to get off and on with safety—we say, at the close of this evidence, the defendant moved to nonsuit the plaintiff under the Act of 1897. This motion was refused, as we think it should have been. It could not have been allowed, without disregarding what this Court had said was negligence in the defendant's not having a conductor on the train. And besides this, there was other evidence tending to show negligence in the defendant, as we will point out further on.

Upon the defendant's motion to nonsuit being refused, the defendant introduced evidence, and, at the close of the evidence on both sides, renewed the motion to dismiss, on the first motion and also on the second motion. This kind of practice seems to have been authorized under the Act of 1897, chap. 109, as originally passed. *Purnell v. Railroad,* 122 N. C., 832, *Wood v. Bartholomew, Ibid,* 177. But under the amendment of 1899, this practice is not allowable. The defendant may stop his case at the close of the plaintiff's evidence, and move to dismiss upon the ground that the

plaintiff has not made a *prima facie* case. And if his motion is refused, he has the right of appeal from the ruling of the Court. But if he does not stop his case and appeal, and introduces evidence, he loses the right of appeal from the refusal to dismiss. When the evidence is all in, he may again move to dismiss upon the ground that the plaintiff has not made out a case. And the only difference between this motion and the one made at the close of the plaintiff's evidence, is, that the plaintiff's evidence stands as it stood when the first motion was made, and he also has the benefit of any new evidence that may have been introduced, since that motion was made, by either side, favorable to the plaintiff. As we understand the original act and the amendment of 1899, the rule now stands just as it did before the passage of the Act of 1897, chap. 109, and the amendment of 1899, except that, under this legislation, it is discretionary with the defendant whether he will introduce evidence after the motion to dismiss, or not; while before these acts, it was discretionary with the Court whether it would allow the defendant to introduce evidence after resting his case and making the motion. We can not sustain the defendant's exception upon this ground.

The defendant was guilty of negligence in not having a conductor on this train—same case, 124 N. C., 574. Hall was the vice-principal, and, as such, must be treated as the principal. *Mason v. Railroad,* 111 N. C., 482; S. C. 114 N. C., 718. As such, he had the right, the power, to discharge the intestate from the employment of the defendant. This power was admitted by Hall on the witness stand. Hall then had the right to order the intestate to bring him the tickets, and the undisputed evidence is that he brought Hall the tickets.

The plaintiff's evidence (Sam Reid) is that Hall ordered

the intestate, just before starting the train at Crouse's Station, to bring him the tickets. It is true that Hall denies this. But as the plaintiff had offered evidence that he did, it was then a question for the jury; and from their verdict, we must take it that they found that he did give the order.

The plaintiff offered evidence that, at the time the intestate gave Hall the tickets, the train was moving too fast to admit of the intestate's getting off the train and on it again, with safety. This is denied by the defendant's evidence, and it then became a question for the jury; and we must take it from their verdict that they believed the plaintiff's evidence.

As it seems to us that these questions were fairly submitted to the jury we can not reverse their findings.

Taking these findings to be true, the defendant was negligent in ordering the intestate to bring Hall the tickets, without giving him time to do so, without having to incur the danger—the hazard—he did in obeying this order.

It is seen that the defendant was negligent in running this train without a conductor and imposing the duties of this position on the intestate; and that it was guilty of negligence in giving this order to the intestate, without giving him time to perform it without danger to his life.

It is admitted that the intestate was killed by the defendant's train, and the jury have found that the killing was caused by the negligence of the defendant. We think there was sufficient evidence of negligence to authorize the verdict, if the jury believed the evidence, and it seems from their verdict they did, and we can not review their findings.

The second issue—contributory negligence—was upon the defendant to establish. *Wood v. Bartholomew* and *Purnell v. Railroad Company, supra.* As we have said, the evidence does not disclose just how the intestate came to fall. But this question has been fairly submitted to the jury upon the evi-

dence in the case, and they have found that the negligence of the intestate did not contribute to his death.

We do not understand the defendant to contest the finding of the jury upon the third issue—the measure of damages, if the plaintiff is entitled to recover anything.

Upon a review of the whole case, we are of the opinion that the defendant has had a fair trial, and we find no legal errors for which we should order a new trial.

Affirmed.