The plaintiffs, L. A. Nowell and J. H. Allen, during the year 1918, were partners in trade, buying leaf tobacco of farmers in Bertie and Hertford counties. This action is brought to recover of defendants the value of certain tobacco raised on the Bass land, and the Phelps tobacco, belonging to plaintiffs, as they allege.
Q. A. Bass owned a farm in Bertie County, and leased his son, J. A. Bass, ten acres of the land to be planted in tobacco. Under their arrangement the elder Bass, as landlord, was to receive half of the crop when prepared for market, and the other half belonged to the son. The son was called to the war before he had completed the crop. Before going to camp he sold out to Asa P. Robertson, who simply took the place of young Bass as tenant of the father. After this arrangement was made, the elder Bass sold his interest in the crop to plaintiffs Nowell and Allen, and received payment in full from them. Later Robertson sold (144) his interest in the crop to plaintiffs Nowell and Allen, who then became the owners of the whole crop. The tobacco was housed and put in the pack house on the Joe Harrell farm in charge of one Evans. There was also placed in this pack house a lot of tobacco plaintiffs had bought of a man named Phelps. The value of these two lots of tobacco was placed as high as $3,000. The evidence is that some of the tobacco was carried from the Harrell pack house and put in a barn on a farm owned by defendant Godwin. Five loads of the rest was carried to Ahoskie and placed in the loft of Godwin's livery stable. This particular lot Godwin and Wynns sold to the defendant Basnight. Robertson has left the State and was never served with process. Wynns was present in *Page 151 
court, but was not placed on the stand as a witness. He introduced his own examination taken before the clerk.
Neither of the plaintiffs authorized the removal of the tobacco by Wynns and Robertson, or knew for some time that they had removed it. They carried away five wagon loads to Godwin's stable in addition to that carried to the Godwin farm — the Britton place. When Godwin sold the tobacco to Basnight he had the check given for the price made payable to Wynns. In his examination before the clerk, Wynns said that he was never paid anything by Godwin, or any one else, for the tobacco.
No exception was taken to the charge, no special prayers were tendered and refused, no motion for nonsuit was made, at the close of plaintiffs' evidence, but such a motion was made at the close of all the evidence.
The plaintiffs having sued for the value of their tobacco, it was incumbent on them to show ownership.
The first seven exceptions are taken to the admission of evidence tending to show such ownership.
Exception one: Q. A. Bass, landlord, was permitted to say that he sold his interest to the plaintiff. How else could plaintiffs show they acquired ownership of the crop?
Exception two: Q. A. Bass, landlord, was permitted to say that plaintiffs paid him for the tobacco; the tobacco in question. Q. A. Bass, as landlord, owned half the Bass tobacco. Plaintiffs bought that half of the Bass crop of him. His testimony covered that point, and was competent. That is the only part of his testimony objected to. We cannot sustain the ground of these two objections.
Exceptions three and four cover the same idea. J. A. Bass, the tenant, was testifying. Plaintiffs claim to have purchased his half of the crop. J. A. Bass sold to A. P. Robertson. No one denied it. It was necessary to prove it. The evidence objected to is that after witness J. A. Bass sold to Robertson, he, Bass, saw Robertson working the crop. The witness Bass said that Wynns was not connected with this arrangement between himself and Robertson. No one claims that he was. (145) These objections are of the same character as the first and second. "Taken during the preliminary stages out of an abundance of precaution." Under all four exceptions the evidence was competent. It was not denied by any one.
Exception five: J. H. Allen, managing partner of the plaintiffs, was testifying as to how and when he bought the two halves of the Bass crop. The defendants objected to his statement that "a few days" intervened between the purchases. No ground of exception is set out in the case, and there can be none. *Page 152 
Exception six: J. H. Allen narrated the terms of his purchase from Robertson, who purchased of the tenant, J. A. Bass. It seems that the identical testimony had been given by this witness before and without objection. The evidence is competent to show the extent of plaintiff's purchase, and that no liability attached to the partnership for making, housing, and marketing the crop.
Exception seven: This relates to the claim for the value of the Phelps tobacco. The claim of plaintiffs is for two lots of tobacco taken from one packhouse; Bass's tobacco and Phelps's tobacco.
Without objection plaintiffs had, at length, testified that they had purchased the Phelps tobacco and put it in the same pack house where the Bass tobacco was. The defendants cross-examined in regard to this at some length.
It surely was competent to show by Phelps that he had in fact sold his crop to plaintiffs. The evidence was competent in chief, substantively, and certainly it corroborated Allen.
Exception eight: The court admitted evidence to show that Robertson and Godwin were farming together. This was competent as tending to show Godwin's interest in the crop. No harm could possibly come of it.
Exception nine: The evidence is that with large sales warehouses in Ahoskie, Godwin, who lives there, and in whose stable loft the tobacco was placed, sold the tobacco to Basnight, who shipped it to Rocky Mount, N.C. for sale. The defendant Basnight was on the stand. Certainly it was proper, as against him, to show that the transaction was fraudulent and not open and fair. The admission was good as against Basnight, who is not complaining. Godwin should have asked that the evidence be confined to Basnight. He did not do so and is bound by it.
At different times during the trial, evidence was restricted and confined to particular persons, or in corroboration. After the admission of the evidence, Basnight's attorney examined him at length on it and without objection from Godwin or from Wynns.
Exception ten: When Godwin sold the tobacco to Basnight he (146) directed that the check be made payable to General Wynns. Wynns endorsed that check by making his mark. Godwin was claiming that he got none of the money, Wynns, under examination before the clerk, swore he got none. Godwin wrote the name "General Wynns" on the back of the check. It was relevant and important to show that fact. Curtis, cashier of the bank, knew Godwin's handwriting, and testified to it. The plaintiffs say that all this objection "goes up in smoke" when Godwin afterwards goes on the stand and admits that he did the endorsing by writing General Wynns' name on the back of the check. *Page 153 
Exception eleven: Godwin was on the stand as a witness for himself. He was asked to narrate a conversation had between him, Godwin, and Robertson at the time the tobacco was put up the stable loft. The court excluded it. Robertson was not a witness. He was not served with process. For some cause he was out of the State. No deposition was taken. The evidence, therefore, was hearsay.
A fatal defect in the exception is that the defendant did not set out the excluded evidence so the court could see its competence, or incompetence. It was the duty of defendants to have done so. Lynch v.Veneer Co., 169 N.C. 170, and cases there cited.
Exception twelve: Godwin alone takes this exception.
Joe Harrell, a witness for the plaintiff, was asked: "Did Wynns tell you he never got a cent for this tobacco?" To this Godwin excepted. The court admitted this evidence against Wynns, but not against Godwin. With this caution and restriction the court admitted the evidence, and in that light only. Wynns did not except. This caution was full and clear.
We here refer to the fact that the defendants put in evidence an examination of Wynns had before the clerk. It is significant, plaintiffs contend, that Wynns was at the trial, in court all the time and cross-examined witnesses, but did not take the stand as a witness. In his written examination, taken before the clerk and put in evidence by the defendants, Wynns says: "Nobody paid me for the tobacco. I did not get any of the money for the tobacco."
The admitted evidence was apparently competent in corroboration. There is ample evidence of a common design and purpose, and the court might have admitted the evidence against Godwin. It did not, and he has no ground of complaint.
We have thus taken up the exceptions as to evidence one by one, and considered them carefully, and even with scrutiny. We would not have done so had it not been for the very exhaustive and searching discussion of them by Mr. Shepherd, which was presented by him with his usual ability and learning and his legal acumen. But after a careful analysis of the case, and deliberation upon the leading and controlling questions raised in argument before us, we find that a simple (147) declaration by us of our conclusion that none of the exceptions as to evidence is tenable would perhaps have been all-sufficient. We feel now, though, that we have acted not only more deferentially, but more satisfactorily, by pursuing the course taken by us, and will proceed to the consideration of the other questions before us.
Exception thirteen: This is taken to the refusal to nonsuit at the end of all the evidence. No such motion was made at the close of plaintiffs' *Page 154 
evidence, and no exception then noted. The motion cannot primarily come at the close of all the evidence. It must be made initially at the close of the plaintiffs' evidence, and, if the motion is refused, there may be an exception and appeal. But if evidence is offered by defendant, the exception is waived. At the end of all the evidence the exception may be renewed, but not then made for the first time.
C.S. 567, clearly and distinctly points out the practice and procedure in the case of a demurrer to evidence and motions to nonsuit upon the evidence, and it must be pursued, if not strictly, at least, substantially. The notes to the section show what had been the construction of the section by this Court. The defendants did not adopt the proper course, and their motion was properly overruled. But had the motion to nonsuit been properly submitted, it should have been overruled upon the merits, as there was ample evidence to support plaintiffs' case and its credibility was for the jury to pass upon. So whichever way is given, the ruling of the court was the correct one.
The following may be considered as fairly interpretative of C.S. 567:
"Change of practice. This section changes the practice in demurrers to the evidence: Riley v. Stone, 169 N.C. 421; Prevatt v. Harrelson,132 N.C. 252; Means v. R. R., 126 N.C. 424. Under the act of 1897, prior to act of 1899: Parlier v. R. R., 129 N.C. 262; Purnell v. R. R.,122 N.C. 832; Worth v. Ferguson, 122 N.C. 381; Wood v. Bartholomew,122 N.C. 177. It does not apply to a defense, Lester v. Harward,173 N.C. 83, but may apply to a counterclaim, Tarault v. Seip,158 N.C. 363. Held not to apply to criminal action, S. v. Hagan,131 N.C. 803; but may now, under section 4643.
"Time of making motion. It must be made first at the close of plaintiff's evidence, and before defendant introduces any evidence: Smithv. Pritchard, 173 N.C. 720; McKellar v. McKay, 156 N.C. 283; Boddie v.Bond, 154 N.C. 359. It is not allowed after verdict, Vaughan v. Davenport,159 N.C. 369; nor after verdict set aside, Riley v. Stone, 169 N.C. 421; nor after judgment by default and inquiry, Mason v. Stephens, 168 N.C. 370.
"If the first motion is overruled, the defendant may except (148) and go to the jury; or except, introduce evidence, and renew motion after all the evidence: Parlier v. R. R., 129 N.C. 262;Means v. R. R., 126 N.C. 424; Worth v. Ferguson, 122 N.C. 381; Millerv. R. R., 128 N.C. 26; Riley v. Stone, 169 N.C. 421. Exception is waived if motion is not renewed: Rackley v. Roberts, 147 N.C. 201; Bordeauxv. R. R., 150 N.C. 528; Earnhardt v. Clement, 137 N.C. 91; Blalock v.Clark, 137 N.C. 140; Fritz v. R. R., 130 N.C. 279; McCall v. R. R.,129 N.C. 298. *Page 155 
"Effect of motion. The motion admits the truth of plaintiff's evidence in light most favorable to him: Rush v. McPherson, 176 N.C. 562; Wood v.Public Corporation, 174 N.C. 697; Johnson v. R. R., 163 N.C. 431; Madryv. Moore, 161 N.C. 295; Poe v. Tel. Co., 160 N.C. 315; Bell v. Power Co.,156 N.C. 316; Mullinax v. R. R., 156 N.C. 541; West v. Tanning Co.,154 N.C. 44; Mercer v. R. R., 154 N.C. 399," and other cases in C.S., on *page 567. 
The motion should not be allowed when there is any evidence, more than a scintilla, upon which to base a verdict: Rogerson v. Hontz, 174 N.C. 27;King v. R. R., 174 N.C. 39; Moore v. R. R., 173 N.C. 311; Lindsey v. R.R., 173 N.C. 390; Meares v. Lumber Co., 172 N.C. 289; Collins v. CasualtyCo., 172 N.C. 543; Barnes v. R. R., 168 N.C. 512; McRainey v. R. R.,168 N.C. 570; Pate v. Blades, 163 N.C. 267, and other cases in C.S., on page 567.
When contributory negligence appears from the plaintiff's evidence, a nonsuit is properly granted: Foard v. Power Co., 170 N.C. 48; Dunnevant v.R. R., 167 N.C. 232; Fulghum v. R. R., 158 N.C. 555; Wright v. R. R.,155 N.C. 325; Neal v. R. R., 126 N.C. 634; but not when such evidence is from the defendant: Horne v. R. R., 170 N.C. 645;Whitesides v. R. R., 128 N.C. 229; nor in cases of comparative negligence under section 3467: Horton v. R. R., 157 N.C. 146.
The ruling of the court must defeat plaintiff's action; if any remedy is left, he should except, proceed with the case, and appeal: Chandler v.Mills, 172 N.C. 366. As to whether the judge, in his discretion, can allow plaintiff, after motion to dismiss, to introduce further testimony, seeFeatherston v. Wilson, 123 N.C. 623. Where judge intimates an opinion on the law which lies at the foundation of the action, adverse to plaintiff, or excludes evidence offered by plaintiff which is material, he may submit to nonsuit and appeal: Merrick v. Bedford, 141 N.C. 505; Hayes v. R. R.,140 N.C. 131; Hickory v. R. R., 138 N.C. 311; Mobley v. Watts, 98 N.C. 284;Tiddy v. Harris, 101 N.C. 589, and other cases in C.S., on page 567.
The plaintiffs now insist that there was ample evidence of a well defined, planned, and executed purpose to sell and appropriate plaintiffs' tobacco on the part of Robertson, Wynns, and Godwin, and that luckily they were detected and caught up with while in (149) the act — olagranti delicto.
The other exceptions are formal, taken to the refusal of a new trial and to the setting aside of the verdict. The action of the judge at the trial concludes as to these matters. There was no error committed in this respect that we can perceive. *Page 156 
After a full and particular review of the case, no error in the various rulings of the learned judge is found by us.
No error.
Cited: Hinnant v. Power Co., 187 N.C. 293; Murphy v. Power Co.,196 N.C. 494; Lunsford v. Mfg. Co., 196 N.C. 511; Scott v. Telegraph Co.,198 N.C. 798; Lee v. Penland, 200 N.C. 341; Price v. Ins. Co.,200 N.C. 428; Mewborn v. Smith, 200 N.C. 534; Batson v. Laundry,202 N.C. 563; Harris v. Buie, 202 N.C. 636; S. v. Klutz,206 N.C. 729; S. v. Bittings, 206 N.C. 802; Harrison v. Ins. Co.,207 N.C. 490; Ferrell v. Ins. Co., 208 N.C. 421; Stephenson v. Honeycutt,209 N.C. 704; Jones v. Ins. Co., 210 N.C. 561; S. v. Ormond,211 N.C. 439; S. v. Walls, 211 N.C. 492; S. v. Caper, 215 N.C. 671;Beck v. Hooks, 218 N.C. 112; Credit Corp. v. Satterfield, 218 N.C. 300;Bundy v. Powell, 229 N.C. 711; Ward v. Cruse, 234 N.C. 389; Rachlin v.Construction Co., 234 N.C. 445; Turnage Co. v. Morton, 240 N.C. 98.