IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-439

Filed 18 March 2026

Moore County, No. 22CVS000272-620

JEFFREY YURK, Plaintiff,

v.

TERRA CENTER, LLC f/k/a CAROLINA STORAGE CENTERS, LLC and CAROLINA RECORDS CENTER, LLC, ALYCE S. LEE, STORAGE MANAGEMENT SERIES, LLC, a Wyoming Limited Liability Company, STORAGE MANAGEMENT SERIES, LLC, a South Carolina Limited Liability Company, Defendants.

Appeal by defendants and cross-appeal by plaintiff from judgment entered 3 October 2024 by Judge Regina M. Joe in Moore County Superior Court. Heard in the Court of Appeals 29 October 2025.

> *Waldrep Wall Babcock & Bailey PLLC, by Chris W. Haaf, and Sigmon Law, by Mark Sigmon, for defendants-appellants.*
>
> *Crooms Law Firm, by Carson E. Crooms and M. Lynnsey Jackson, for plaintiff-appellant.*

GORE, Judge.

This civil action arises from a dispute over plaintiff Jeffrey Yurk's inventory of merchandise stored at a facility operated by defendants Carolina Storage Centers, LLC, Carolina Records Center, LLC, Storage Management Series, LLC, and Alyce S. Lee. Following a bench trial, the superior court entered judgment for plaintiff on claims of conversion, trespass to chattels, and unfair and deceptive trade practices, awarding compensatory, punitive, trebled, and attorney's fee damages. Both sides

appeal.

Defendants principally challenge plaintiff's standing, the sufficiency of the evidence supporting liability, the scope of damages, and Lee's personal liability. Plaintiff cross-appeals, seeking review of rulings dismissing statutory and tort claims, the refusal to pierce the corporate veil, and several pretrial orders entered before he amended his complaint.

This Court has jurisdiction under N.C.G.S. § 7A-27(b)(1) from the final judgment of the superior court. For the reasons that follow, we dismiss part of plaintiff's appeal as moot, affirm the judgment in part, and vacate and remand in part for further proceedings on extra-compensatory damages and attorney's fees.

**I.**

Plaintiff Jeffrey Yurk stored personal property in two interior units at a Vass, North Carolina, storage facility owned by Terra Center, LLC, formerly known as Carolina Storage Centers, LLC ("CSC"). On 8 July 2021, defendants took possession of the property and over-locked the units; the trial court found that Alyce S. Lee, the sole owner and an officer/manager of the corporate defendants, directed that the property be withheld. The property was later moved twice and, at the time of trial, was held by Carolina Records Center, LLC ("CRC").

The parties disputed what the property comprised. Defendants commissioned an inventory in the summer of 2023 that was admitted into evidence; Yurk contended the list was incomplete and did not reflect all items he stored at the facility.

Defendants admitted they took possession of the property but maintained they were entitled to do so, disputing Yurk's ownership and asserting that he had illegally stored the goods and conspired with a manager to avoid rent; during their case-in-chief, defendants voluntarily dismissed related counterclaims. The trial court found that "at all times relevant" Yurk was the lawful owner of the personal property.

The record further reflects that Yurk's use of the facility began with arrangements through on-site manager Ed LaForge, an employee of Storage Management Services ("SMS"), which provided staffing for the storage businesses, and that Yurk later used interior Units A11 and C23 with LaForge's knowledge and apparent authority.

Following a bench trial, the trial court entered judgment for Yurk on claims for conversion, trespass to chattels, and unfair and deceptive trade practices, and it dismissed his Self-Storage Act, civil-trespass, and veil-piercing claims. The amended order awarded $155,552.10 in compensatory damages against all defendants jointly and severally, punitive damages of $307,104.20 against CSC and CRC, treble damages of $460,656.30 under Chapter 75 against Lee and SMS, and attorney's fees and costs. Defendants noticed appeal; Yurk filed a cross-appeal.

We begin with defendants' appeal, addressing standing, the liability rulings (conversion, trespass to chattels, and UDTPA), and the associated damages. We then turn to plaintiff's cross-appeal, first resolving a threshold mootness issue arising from the amended complaint and then considering his remaining challenges to the

dismissal of the Self-Storage Act and civil-trespass claims and the refusal to pierce the corporate veil.

## II.

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Cartin v. Harrison*, 151 N.C. App. 697, 699 (2002) (citation omitted). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Sessler v. Marsh*, 144 N.C. App. 623, 628 (2001) (citation omitted). "Standing is a necessary prerequisite to the court's proper exercise of subject-matter jurisdiction," and whether a party has standing is reviewed de novo. *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164 (2001); *In re Menendez*, 259 N.C. App. 460, 462 (2018).

Defendants argue plaintiff lacked standing because the merchandise belonged to Group 504, LLC, not to Yurk personally. They cite trial testimony that Group 504 received payments and profits from the inventory at events, as well as text messages in which Yurk referred to the goods as "our property," and they contend the use of a personal credit card is not proof of individual ownership of LLC assets. They further rely on the principle that "[s]pecific assets of an LLC . . . are owned by the entity and are not the property of the interest owners." *Chafin v. Chafin*, 250 N.C. App. 19, 27 (2016).

Plaintiff responds that the trial court expressly found he was "the lawful owner of the personal property," a finding grounded in testimony and exhibits, as well as defendants' own references to the goods as "Mr. Yurk's" and their offer to return the property if he signed a release. The Amended Order states: "at all times relevant . . . Mr. Yurk was the lawful owner of the personal property." Trial citations in plaintiff's brief identify (i) correspondence read into the record offering to return "Mr. Yurk's" property in exchange for a liability release, and (ii) counsel's use of that phrasing at trial, as well as testimony from Mrs. Yurk and Mr. Yurk concerning purchases on his personal credit cards and storage/use of the goods.

On this record, the predicate ownership finding survives review. The court's FOF 4 squarely resolves ownership in plaintiff's favor, and "competent evidence" supporting it includes: Mrs. Yurk's testimony that apparel was purchased on Mr. Yurk's personal cards and stored at their residences before moving into the units; Yurk's testimony and credit-card statements documenting purchases; and defense references to Mr. Yurk's property when proposing return conditioned on a release. The contrary evidence defendants cite—profits running through Group 504 and "our property" texts—creates a conflict, but it does not negate the presence of some competent evidence supporting the court's finding.

Applying the law to those supported facts, plaintiff had standing. "The North Carolina Constitution confers standing to sue in our courts on those who suffer the infringement of a legal right . . . ." *Comm. to Elect Dan Forest v. Emps. Pol. Action*

*Comm.*, 376 N.C. 558, 608 (2021). Here, the trial court found that plaintiff owned the property at issue and was entitled to its possession. Because that finding is supported by competent evidence, the legal conclusion that plaintiff suffered the infringement of a legal right—and thus had standing—follows.

### III.

**A.**

Defendants next argue the trial court erred in finding them liable for conversion because, they contend, plaintiff failed to establish personal ownership of the property by competent evidence. They further assert that they lacked actual or constructive notice of plaintiff's ownership and therefore cannot be held liable for conversion.

"The tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956) (citation omitted). "To recover on a claim for conversion, plaintiff must prove both ownership in himself and the wrongful possession or conversion of the property by the defendant." *Gadson v. Toney*, 69 N.C. App. 244, 246 (1984) (citation omitted).

We reject defendants' argument for substantially the same reasons we reject their standing challenge. The trial court expressly found that "at all times relevant . . . Mr. Yurk was the lawful owner of the personal property" and that he was entitled

to its immediate possession. Those findings are supported by competent evidence, including plaintiff's testimony and credit card statements showing he purchased the disputed inventory from Nine Line Apparel with his personal funds, testimony that the goods were stored at his personal residences prior to rental, and defendants' own references to "Mr. Yurk's property" when conditioning its return on a liability release. That defendants point to contrary evidence, such as the involvement of Group 504 or text messages referring to "our property," does not negate the presence of competent evidence supporting the trial court's findings. *Sessler*, 144 N.C. App. at 628.

We are likewise unpersuaded by defendants' argument that their lack of notice defeats liability. The trial court found that plaintiff "consistently asserted ownership of the personal property in dispute since the date of the taking" and that "no other person or entity has asserted ownership of the same." Those findings are supported by the record.

Defendants also argue that plaintiff's evidence of ownership was insufficient because he did not offer corroborating testimony from the seller. *Nowell v. Basnight*, 185 N.C. 142 (1923), on which defendants rely, imposes no such requirement; it merely states that a plaintiff must "show ownership." Here, the trial court credited plaintiff's testimony and documentary exhibits (including credit-card statements) and found that plaintiff was the lawful owner of the personal property. Under the bench-trial standard, our task is only to determine whether competent evidence supports those findings; it does. *Cartin*, 151 N.C. App. at 699; *Sessler*, 144 N.C. App.

at 628.

The trial court also made factual findings supporting the second element of conversion. It found that defendants over-locked plaintiff's units on 8 July 2021, moved the property twice, retained it through trial, and conditioned its return on execution of a liability release. Accepting those facts as supported by competent evidence, the trial court concluded that defendants' conduct wrongfully excluded plaintiff from exercising his rights of ownership and therefore constituted conversion. *Peed*, 244 N.C. at 439. That legal conclusion is correct.

Because the trial court's findings are supported by competent evidence and those findings satisfy both elements of conversion, we affirm the judgment on this claim.

**B.**

Defendants next contend the trial court erred in finding them liable for trespass to chattels because, they argue, plaintiff failed to prove actual or constructive possession of the property at the time of the interference and failed to show that defendants' conduct was unauthorized or unlawful.

"To satisfy a claim for trespass to chattel, a plaintiff must 'demonstrate that [he] had either actual or constructive possession of the personalty or goods in question at the time of the trespass, and that there was an unauthorized, unlawful interference or dispossession of the property.'" *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 786–87 (2008) (citation omitted). "Actual possession consists of

exercising dominion over, making ordinary use of, or taking the profits from the [property] in dispute." *Fordham v. Eason*, 351 N.C. 151, 155 (1999). "Constructive possession is a legal fiction existing when there is no actual possession, but there is title granting an immediate right to actual possession." *Id.*

Defendants' challenge to the possession element fails at the outset. The trial court expressly found—and defendants conceded—that plaintiff had constructive possession of the personal property at the time of the trespass. Defendants do not challenge that finding on appeal. "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97 (1991). That concession and unchallenged finding foreclose defendants' first argument.

As to the second element, the trial court found that defendants wrongfully interfered with plaintiff's possessory interest by excluding him from access to his property and refusing to return it for an extended period. Those findings—grounded in the same conduct that supports the conversion claim discussed above—are supported by competent evidence and establish the "unauthorized, unlawful interference" required for trespass to chattels. *Kirschbaum*, 188 N.C. App. at 786–87. Accordingly, the trial court did not err in concluding that defendants committed trespass to chattels.

**C.**

Defendants contend the trial court erred in holding them liable under N.C.G.S.

§ 75-1.1 because, they argue, plaintiff failed to present competent evidence that their conduct was unfair or deceptive. They also assert that their actions were consistent with industry practice, taken in good faith, and do not rise to the level required for liability under the statute. Whether conduct violates § 75-1.1 is a question of law reviewed de novo. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). In a non-jury trial, the trial court's findings of fact are binding on appeal if supported by competent evidence. *Cartin*, 151 N.C. App. at 699; *Sessler*, 144 N.C. App. at 628.

"In order to prevail under [the UDTPA] plaintiffs must prove: (1) defendant committed an unfair or deceptive act or practice, (2) that the action in question was in or affecting commerce, [and] (3) that said act proximately caused actual injury to plaintiff." *Canady v. Mann*, 107 N.C. App. 252, 260 (1992) (citation omitted). An act is "unfair" if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and it is "deceptive" if it has the capacity or tendency to deceive. *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 41 (2006) (citation omitted).

The trial court found that defendant Lee "engaged in unfair and deceptive trade practices when she directed that plaintiff's property be taken and . . . continued to withhold his property" for more than three years, that her conduct "directly affected commerce," and that it was "substantially injurious" to plaintiff by depriving him of property, diminishing its value, and causing lost business opportunities. These findings rest on the same supported facts underpinning the conversion claim:

defendants over-locked plaintiff's storage units on 8 July 2021, moved the property twice, refused to return it despite repeated demands, and conditioned its return on execution of a liability release.

We reject defendants' assertion that the UDTPA claim fails for the same reasons as their standing and conversion arguments. As explained above, the trial court's findings that plaintiff owned the property and asserted that ownership from the outset are supported by competent evidence. Those findings are binding on appeal.

We also reject defendants' contention that their conduct was reasonable. The trial court acknowledged defendants' initial caution but found they nevertheless refused for more than three years to return property they knew plaintiff claimed, despite repeated requests and no competing claim of ownership. Good faith is no defense under § 75-1.1. *Marshall v. Miller*, 302 N.C. 539, 548 (1981). And conduct need not match the egregious facts in *Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368 (2005), or *Love v. Pressley*, 34 N.C. App. 503 (1977), to be actionable. Conditioning the return of another's property on a release of liability and withholding it for years despite knowing the claimed ownership is an inequitable assertion of power and position and thus an "oppressive" and "substantially injurious" act within the statute's scope. *See Gray*, 352 N.C. at 68.

The statute's remaining elements are likewise satisfied. The storage and property-rental services at issue are business activities "in or affecting commerce."

*Dalton v. Camp*, 353 N.C. 647, 656 (2001). And the trial court's findings of prolonged deprivation, diminished value, and lost business interaction establish proximate injury.

Because the trial court's findings are supported by competent evidence and establish each element of a UDTPA claim, its conclusion that defendants violated N.C.G.S. § 75-1.1 is correct. The judgment on plaintiff's UDTPA claim is therefore affirmed.

**D.**

   *1.*

Defendants argue the $155,552.10 award must be vacated because plaintiff offered no competent basis to fix fair market value with the required reasonable certainty. *See Heaton-Sides v. Snipes*, 233 N.C. App. 1, 5–6 (2014); *Mace v. Pyatt*, 203 N.C. App. 245, 253–54 (2010). "For a conversion claim, damages are determined by the 'fair market value of the converted property at the time and place of the conversion, plus interest.'" *Heaton-Sides*, 233 N.C. App. at 5. Proof need not be mathematically precise—only sufficient to permit a reasonable estimate. *Lacey v. Kirk*, 238 N.C. App. 376, 392 (2014).

Here, the court accepted defendants' itemized inventory for quantities and credited plaintiff's owner-opinion pricing—tied to Nine Line's set resale prices and his sales experience—corroborated by purchase statements. "[T]he opinion of a property owner is competent evidence as to the value of such property." *Compton v.*

*Kirby*, 157 N.C. App. 1, 18 (2003). Unlike *Heaton-Sides* and *Mace*, this record contains both a concrete quantity list and market prices from which the court could compute value with approximate accuracy.

We therefore affirm the $155,552.10 compensatory award.

*2.*

Defendants argue punitive damages cannot stand because plaintiff failed to prove willful or wanton conduct by clear and convincing evidence. They further contend plaintiff must elect between punitive and treble damages.

Punitive damages require fraud, malice, or willful or wanton conduct proved by clear and convincing evidence. N.C.G.S. § 1D-15(a); *see* § 1D-5(7). A corporation may be held liable for punitive damages only if its officers, directors, or managers participated in or condoned the conduct giving rise to the award. § 1D-15(c). The trial court expressly found that defendants acted willfully and wantonly in conscious disregard of plaintiff's rights, and the record reflects that the conduct was directed and ratified by management. Defendants do not show those findings lack competent evidentiary support, and we will not reweigh the evidence on appeal.

As to duplication, treble damages under § 75-16 are punitive in nature and cannot be awarded for the same conduct against the same defendant. *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 191 (1993); *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 428–29 (1986). Here, the trial court imposed punitive damages on CSC and CRC and trebled damages under § 75-16 against Lee and SMS following plaintiff's

election. Because the awards are imposed on different defendants under distinct theories, no election is required.

We therefore affirm the punitive award against CSC and CRC and the trebled award under § 75-16 against Lee and SMS. However, paragraph 36 of the judgment purports to impose joint-and-several liability for the trebled amount across all defendants, which is inconsistent with the court's preceding allocations and the prohibition on double recovery. We vacate that portion of the judgment and remand for the trial court to clarify the allocation of extra-compensatory damages consistent with this opinion.

**3.**

A fee award under N.C.G.S. § 75-16.1 requires a finding that the defendant "willfully engaged" in the unfair or deceptive act and unreasonably refused "to fully resolve the matter." *Kuykendall*, 335 N.C. at 193–94. Moreover, "attorneys' fees may not be awarded in the absence of express statutory authority." *Lacey v. Kirk*, 238 N.C. App. 376, 399 (2014).

Here, the trial court awarded $36,820.13 in attorney's fees and $2,334.52 in costs "against all defendants, jointly and severally." But plaintiff prevailed on his UDTPA claim only against Lee and SMS; the claim was dismissed as to CSC and CRC. Section 75-16.1 provides no basis to impose attorney's fees against defendants not found liable under Chapter 75.

Because the order does not clarify the statutory authority for extending the fee

award to CSC and CRC, we vacate that portion of the judgment and remand for the trial court either to identify a valid statutory basis for such an award or to vacate it as to those defendants. The award may stand as to Lee and SMS if supported by the required findings under § 75-16.1.

## IV.

Defendants contend the judgment against Lee cannot stand because the trial court denied plaintiff's veil-piercing claim. The argument conflates two distinct routes to personal liability. North Carolina law permits liability against an officer or LLC member for her own torts, independent of any veil-piercing theory. *White v. Collins Bldg., Inc.*, 209 N.C. App. 48, 51–53 (2011). Veil piercing is a separate doctrine used to disregard the entity; it is not required where the individual personally commits the tort. *See White*, 209 N.C. App. at 52–53; *cf. Spaulding v. Honeywell Int'l, Inc.*, 184 N.C. App. 317, 322 (2007) (mere participation in business affairs, without individual tortious conduct, is insufficient).

Here, the trial court denied veil piercing, and plaintiff has separately appealed that ruling. But the judgment against Lee does not depend on veil piercing. The court found that Lee directed the taking and continued withholding of plaintiff's property and thus personally engaged in an unfair and deceptive act "in or affecting commerce," entering judgment against Lee and SMS under Chapter 75 with trebling. Those findings establish direct individual liability based on Lee's own conduct; they are not "mere participation" of the sort discussed in *Spaulding*. Because the

judgment rests on supported findings of Lee's personal participation, the denial of veil piercing does not require vacatur. *White*, 209 N.C. App. at 51–53.

Accordingly, we reject defendants' contention that the trial court's refusal to pierce the veil mandates reversal of the judgment against Lee.

## V.

Plaintiff cross-appeals from the trial court's entry of summary judgment on (1) his breach of contract claim relating to Unit A11, (2) his breach of contract claim relating to Unit C23, and (3) his UDTPA claim against defendants CSC and CRC. He argues genuine issues of material fact existed as to whether enforceable contracts were formed for each unit and whether CSC and CRC's conduct constituted an unfair or deceptive practice under Chapter 75.

We do not reach the merits of those arguments because they are moot. After the trial court entered partial summary judgment dismissing those claims, plaintiff filed an amended complaint that did not reassert them. It is well established that "an amended complaint has the effect of superseding the original complaint." *Hyder v. Dergance*, 76 N.C. App. 317, 319–20 (1985). Once an amended pleading is filed, "the original complaint [is] superseded," *Burrell v. Dickson Transfer Co.*, 244 N.C. 662, 665 (1956), and "any arguments regarding the original complaint [become] moot." *Woody v. Vickrey*, 276 N.C. App. 427, 440 (2021); *see also Houston v. Tillman*, 234 N.C. App. 691, 695 (2014).

Because plaintiff's amended complaint superseded the original and did not

restate the breach of contract claims for Units A11 and C23 or the UDTPA claim against CSC and CRC, those claims ceased to exist. As a result, there is no live controversy for this Court to resolve. Plaintiff's challenges to the trial court's summary judgment order on those claims are therefore dismissed as moot.

## VI.

Plaintiff argues the trial court misapplied the North Carolina Self-Storage Facility Act, N.C.G.S. §§ 44A-40 et seq., by dismissing his claim on the ground that defendants had not "asserted a lien." He contends the Act governed the relationship (oral rental agreements; he was an "occupant"), and that CSC "disposed" of his goods without following the notice and public-sale procedures in § 44A-43; therefore, he was entitled to the § 44A-44(d) statutory remedy.

Defendants respond that § 44A-44(d) expressly limits statutory liability to a "lienor," defined in § 44A-40(2) as one "entitled to a lien under this Article," and that plaintiff never showed CSC/Lee were acting (or entitled to act) as lienors or that they enforced a lien. On that reading, no § 44A remedy lies where no lien was invoked or enforced; the trial court therefore properly dismissed the claim.

We agree with the trial court. The text of § 44A-44(d) imposes liability for noncompliance on a "lienor," and the procedural duties plaintiff invokes—default notice, opportunity to cure, and public sale—are the enforcement steps applicable when an owner proceeds to enforce a self-storage lien under § 44A-43. Plaintiff's briefing rephrases "lienor" as "self-storage facility" and treats any movement of goods

as a "disposition" triggering the Act's sale procedures; but the statute ties the § 44A-43/-44 remedies to lien enforcement by a party entitled to a lien, not to every dispute over stored property.  On this record, the trial court expressly dismissed because CSC did not assert a lien, and plaintiff identifies no statutory provision that creates a private right of action absent lien status or lien enforcement.

That does not leave plaintiff remediless; the conduct he proved was addressed through his common-law and Chapter 75 claims.  But because the § 44A claim as pleaded and argued depends on noncompliance by a "lienor," and defendants did not proceed (and were not shown to be proceeding) as lienors, dismissal of the Self-Storage Act claim is affirmed.

## VII.

Plaintiff next contends the court erred by dismissing his civil trespass claim. He argues he was in possession of the storage units and defendants unlawfully interfered with that possessory interest by over-locking the units and entering to move his property.

"To prevail in a trespass action, a plaintiff must show (1) he was in actual or constructive possession of the property; (2) unauthorized entry by the defendant; and (3) damage resulting from the trespass." *Maint. Equip. Co. v. Godley Builders*, 107 N.C. App. 343, 348 (1992) (citation omitted).  Possession, not ownership, is the protected interest. *Matthews v. Forrest*, 235 N.C. 281, 283 (1952).  And "one who enters upon the land of another with the consent of the possessor may, by his

subsequent wrongful act in excess or abuse of his authority to enter, become liable in damages as a trespasser." *Smith v. VonCannon*, 283 N.C. 656, 660 (1973).

We affirm the dismissal. The record contains no competent evidence that plaintiff held actual or constructive possession of the real property at the time of the alleged entry. The trial court found disputed evidence as to whether any valid lease existed for Units A-11 or C-23, and plaintiff acknowledged that at least one unit had not been paid for and later offered to cure that nonpayment. Absent proof of a leasehold or other lawful right to exclusive possession of the premises, plaintiff failed to satisfy the first element of a trespass claim. That deficiency is fatal regardless of whether defendants wrongfully controlled the chattels stored inside—conversion and trespass to chattels protect different interests than civil trespass, which safeguards possession of land itself.

Accordingly, the trial court's dismissal of the civil trespass claim is affirmed.

## VIII.

Plaintiff argues the court should have pierced the corporate veil to hold Lee derivatively liable through the entities she controlled. We disagree.

It is "well recognized that courts will disregard the corporate form or 'pierce the corporate veil' . . . whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454 (1985) (citation omitted). Under North Carolina's instrumentality rule, a plaintiff must show: (1) complete domination and control of the entity so that it had no separate existence with respect to the transaction

attacked; (2) use of that control to commit a fraud, wrong, or violation of a legal duty; and (3) proximate causation of the injury. *Id.* Factors bearing on the analysis include inadequate capitalization, noncompliance with corporate formalities, complete domination, commingling or siphoning of funds, and excessive fragmentation of a single enterprise. *Id.* at 455.

The trial court expressly declined to pierce the veil, finding the showing "falls short." On appeal, plaintiff emphasizes that Lee was the sole owner/operator of multiple affiliated entities and describes them as a "tangled web" that could not function without each other, with alleged failures to follow formalities. But sole ownership, centralized management, and interrelated operations—without more—do not satisfy *Glenn.* What is missing is competent proof of the *Glenn* elements and factors: e.g., thin capitalization, disregard of corporate records and required formalities, commingling or siphoning, use of the entities as mere shells to perpetrate a wrong, and a causal link from such misuse to the injury. *See Glenn*, 313 N.C. at 454–55. Plaintiff points to no undisputed evidence that compels contrary findings on those points, and the record does not require them as a matter of law.

On this record, the court's refusal to disregard the entities' separate existence accords with the instrumentality rule. We therefore affirm the denial of plaintiff's veil-piercing claim.

## IX.

Plaintiff's first three issues—challenging rulings directed to the original

complaint—are dismissed as moot because the amended complaint superseded the original. We affirm the trial court's dismissal of plaintiff's claims under the Self-Storage Facility Act and for civil trespass, and its refusal to pierce the corporate veil.

On defendants' appeal, we affirm the judgment as to liability for conversion, trespass to chattels, and unfair and deceptive trade practices, and we affirm the compensatory-damages award. We also affirm the punitive-damages award against CSC and CRC and the trebled-damages award against Lee and SMS.

However, paragraph 36 of the judgment purports to impose joint-and-several liability for the trebled amount across all defendants, which is inconsistent with the preceding allocations and the prohibition on double recovery. We vacate paragraph 36 and remand for the trial court to clarify the allocation of extra-compensatory damages consistent with this opinion. We likewise vacate the attorney's fees award and remand for the court to identify the statutory basis, specify the defendants to whom any award applies, and make the findings required by N.C.G.S. § 75-16.1, or to vacate the award if no statutory predicate exists.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

Judges ARROWOOD and GRIFFIN concur.