ESTEEL COMPANY v. B. PAUL GOODMAN

No. 8628SC182

(Filed 16 September 1986)

1. **Rules of Civil Procedure § 41 — motion for involuntary dismissal — discretionary power of trial court**

In an action to recover for conversion of a crane, the trial court did not err in refusing to grant defendant's motion for involuntary dismissal at the close of plaintiff's evidence, since N.C.G.S. § 1A-1, Rule 41(b) clearly allows the court to decline to render judgment until all of the evidence has been presented.

2. **Vendor and Purchaser § 1.4 — option to purchase crane — payment required to exercise option — no payment — option not exercised**

In an action to recover for conversion of a crane where defendant alleged that he exercised an option to purchase the crane and there was therefore no conversion, the trial court properly concluded that the option was never exercised where there was evidence that defendant's company intended to exercise the option and evidence to the contrary; the option clause itself was ambiguous as to whether both notification *and* payment were necessary to exercise the option; the trial court properly construed the agreement strictly in favor of the optionor and non-drafting party, plaintiff; and the uncontradicted evidence showed that payment was never made and the option was therefore never exercised.

3. **Corporations § 15 — conversion of crane — liability of corporation's president**

Defendant could be held personally liable for the conversion of a crane leased by his company since an officer of a corporation who commits a tort is individually liable for that tort, even though the officer may have acted on behalf of the corporation in committing the wrongful act; defendant's company sold the leased crane to another company; the certificate guaranteeing the quality of the crane, which accompanied the sale of the crane, was signed by defendant in his representative capacity; and defendant admitted his participation in the sale.

4. **Trover and Conversion § 4 — conversion of crane — fair market value — sufficiency of evidence**

In an action to recover for conversion of a crane, evidence was sufficient to support the trial court's determination of the fair market value of the crane at the time of conversion where such evidence consisted of the amount plaintiff had paid for the machinery, the sale price contained in the agreement between plaintiff and defendant's company two years before the alleged conversion, the cost of repairs and maintenance performed on the machine while in the possession of defendant's company, and defendant's certification to a subsequent purchaser that the machine was in excellent condition.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 2 April 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 19 August 1986.

On 22 October 1979, the Esteel Company (Esteel), a Tennessee partnership, and Al J. Goodman & Sons, Inc. (Goodman & Sons), a North Carolina corporation, entered into an equipment rental agreement pursuant to which Esteel leased to Goodman & Sons a Pettibone Model 36 truck crane for a minimum period of six months at a monthly rental rate of $1,500, commencing on 6 November 1979. The agreement also provided that Goodman & Sons would have an option to purchase the crane at a price of $35,000, and that if Goodman & Sons exercised the option, all of the rent paid during the first six months, and two-thirds of any rental paid thereafter, would be credited against the purchase price. The balance of the purchase price was made "payable within 30 days of notification by lessee to lessor of election to purchase machine." Title to the crane was to remain in Esteel unless transferred to Goodman & Sons through sale. The lease was signed for Goodman & Sons by B. Paul Goodman, the defendant in this action, who signed in his representative capacity as president.

During the first 12 months of the lease, all monthly rents were paid, totaling $19,500. Sometime after, a dispute arose as to payments for repairs that Goodman & Sons had to perform on the truck. Following a letter from Goodman & Sons to Esteel, dated 27 April 1981, the two agreed to divide the costs of the repairs evenly. This letter also discussed treatment of rent due from 6 November 1980 to that time, as well as the amount of rent paid that could be credited towards the machine's purchase.

On 24 July 1981, a check for $10,312.22 from Goodman & Sons was sent to Esteel; this amount equaled the rents due for 6 November 1980—6 August 1981, less Esteel's share of the repair costs. An accompanying purchase order showed a balance remaining of $11,000 owed to Esteel, which equaled the amount which Goodman & Sons would owe Esteel for the crane if Goodman & Sons had exercised its option. No payments from Goodman & Sons were received after that time.

On 9 October 1981, Goodman & Sons sold the crane to Productos Metalicos Especialzadoz, a Mexican company, for

$53,011.68. The certificate accompanying the sale was signed by defendant B. Paul Goodman as president of Goodman & Sons. Esteel was not informed of the sale until approximately one month later.

After learning of the crane's sale, Esteel sent Goodman & Sons a letter, dated 11 November 1981, informing it that the lease was being terminated due to default and demanding return of the crane. Defendant B. Paul Goodman denied receiving this letter. By another letter dated 10 February 1982, Esteel demanded return of the crane or payment of the $11,000 balance of 24 July 1981, plus interest. In response Goodman & Sons sent Esteel a promissory note for $11,000, together with its check for $943.48 in interest. The check bore a clause purporting to be acknowledgment by Esteel of its acceptance of the promissory note by its endorsement of the check. Esteel did not endorse or cash the check.

On 2 June 1982, Esteel brought suit against Goodman & Sons, seeking return of the crane or, alternatively, damages for breach of the lease. That suit was subsequently discontinued after Goodman & Sons filed a voluntary petition in bankruptcy in September 1982. Thereafter, Esteel brought this suit against defendant B. Paul Goodman, individually, alleging a conversion of the crane.

The trial court, sitting without a jury, found that Goodman & Sons had not exercised its option to purchase the crane and, therefore, had converted it by selling it. Additionally, the court found that Goodman was personally liable for the conversion, and that the fair market value of the crane at the time of conversion was $35,000. From judgment entered for Esteel for $35,000, defendant appeals.

*Jack W. Westall, Jr., by K. G. Lindsey and Jack W. Westall, Jr., for plaintiff appellee.*

*Patla, Straus, Robinson & Moore, by Victor W. Buchanan for defendant appellant.*

MARTIN, Judge.

This appeal presents four questions. First, did the trial court err in not granting defendant's motion for involuntary dismissal at the close of the plaintiff's evidence? Second, did the court err

in finding that the option to purchase the crane had not been exercised? Third, did the court err in finding defendant personally liable for the conversion of the crane? And fourth, did the court err in its determination of the fair market value of the crane at the time of conversion? We answer each of these questions negatively, and affirm the judgment of the trial court.

[1] Rule 41(b) of the Rules of Civil Procedure allows the defendant in a bench trial, when the plaintiff's presentation of evidence has been completed, to move for involuntary dismissal on the grounds that the plaintiff has shown no right to relief based upon facts or law. "The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." G.S. 1A-1, Rule 41(b). The permissive language of the rule itself makes clear that the court may decline to render judgment until all of the evidence has been presented. *Helms v. Rea,* 282 N.C. 610, 194 S.E. 2d 1 (1973); *Passmore v. Woodard,* 37 N.C. App. 535, 246 S.E. 2d 795 (1978). In fact, a judge should decline to do so except in the clearest of cases. *Henderson County v. Osteen,* 297 N.C. 113, 254 S.E. 2d 160 (1979); *Helms v. Rea, supra.* Clearly, then, the trial court committed no error by declining to grant defendant's motion for involuntary dismissal.

[2] Defendant's next contention is that the trial court erred by finding and concluding that the option to purchase the crane was never exercised. He contends that, the option having been exercised, a conversion never occurred. This case was tried without a jury; the judge sat as both trier of law and of fact. A court's findings of fact are conclusive if supported by any competent evidence, and judgments supported by such evidence will be affirmed, even though there is evidence to the contrary. *Transit, Inc. v. Casualty Co.,* 285 N.C. 541, 206 S.E. 2d 155 (1974); *Harrelson v. Insurance Co.,* 272 N.C. 603, 158 S.E. 2d 812 (1968). With respect to the exercise of the option to purchase, the trial court found:

> 9. That the Equipment Rental Agreement entered into between the Plaintiff and Al J. Goodman and Sons, Inc. provided that Al J. Goodman and Sons, Inc. had an option to purchase the truck crane but that the Defendant and Al J. Goodman and Sons, Inc. failed to comply with the terms of

the option as set forth in the contract between the Plaintiff and Al J. Goodman and Sons, Inc.

10. That Defendant B. Paul Goodman acting on behalf of Al J. Goodman and Sons, Inc. purported to exercise the option on or about July 24, 1981, but that said purported exercise of option was not effective because neither the Defendant nor Al J. Goodman and Sons, Inc. ever paid the purchase price nor was the purchase price tendered at any time to Esteel Company, and the truck crane remained the property of Esteel Company and not that of Al J. Goodman and Sons, Inc.

The court concluded that Goodman & Sons had not purchased the crane truck, that title thereto remained in Esteel, and that the sale of the machine constituted a conversion of it.

Defendant Goodman contends that there was evidence from which the trial court should have found that Goodman & Sons exercised its option to purchase the crane. Specifically, he points to letters which he sent to Esteel on 27 April 1981 and 24 July 1981, in which he referred to getting "this matter consummated" and "finally clearing the Pettibone 36 crane matter." Further, he argues, a purchase order which was enclosed with the 24 July 1981 letter showed a "balance due" for the crane of $11,000 and contained a notation "No Tax—For Resale." While the letters and purchase order furnish some evidence of Goodman & Sons' intent to exercise the option, they do not amount to an unequivocal notification of its election to do so. Indeed, there was evidence to the contrary, including defendant's acknowledgment, in a letter to Esteel dated 15 February 1982, that he regretted selling the machine; his referral to a proposal he had made to Mr. Schrader in November 1981, after the crane had been sold to the Mexican company, to resolve the "problem"; and his further proposal for payment in a manner appreciably different from that specified in the option.

More significantly, there is the ambiguity of the option clause itself. The rental agreement granted Goodman & Sons with the option to purchase "with balance due of purchase price payable within 30 days of notification by lessee to lessor of election to purchase machine." Defendant Goodman argues that its purchase order of 24 July 1981 constituted notification of its election to ex-

ercise the option, and that under the terms of the option, the sale was complete and title passed upon such notification. According to his argument, payment within 30 days was merely a condition subsequent to the sale, giving rise only to a claim against Goodman & Sons for the balance of the purchase price. Esteel argues, however, that under the terms of the agreement both notification *and* payment were necessary to exercise the option and pass title to Goodman & Sons.

Because an option is a unilateral agreement with all obligations upon the optionor, the option agreement is to be construed strictly in the optionor's favor. *Lentz v. Lentz*, 5 N.C. App. 309, 168 S.E. 2d 437 (1969); *Builders, Inc. v. Bridgers*, 2 N.C. App. 662, 163 S.E. 2d 642 (1968). This is especially true where, as here, the optionee drafted the agreement, because ambiguous contract provisions are to be construed against the drafting party. *Contracting Co. v. Ports Authority*, 284 N.C. 732, 202 S.E. 2d 473 (1974). And an option must be accepted according to the terms of the option agreement. *Catawba Athletics v. Newton Car Wash*, 53 N.C. App. 708, 281 S.E. 2d 676 (1981).

The option agreement in this case is subject to either construction contended by the parties. Because it is ambiguous, the trial court properly construed the agreement strictly in favor of the optionor and non-drafting party, Esteel. So construed, the agreement requires payment of the purchase price within thirty days of notification in order to effectively exercise the option and pass title. The court found, upon uncontradicted evidence, that payment was never made and concluded that the option was not exercised. Thus, the court properly concluded that title to the crane remained in Esteel, and that a conversion was committed by its sale.

[3] The next question is whether defendant Goodman can be held personally liable for the conversion. It has long been established that an officer of a corporation who commits a tort is individually liable for that tort, even though the officer may have acted on behalf of the corporation in committing the wrongful act. *Mills v. Mills*, 230 N.C. 286, 52 S.E. 2d 915 (1949); *Records v. Tape Corp.*, 19 N.C. App. 207, 198 S.E. 2d 452, *cert. denied*, 284 N.C. 255, 200 S.E. 2d 653 (1973). The certificate guaranteeing the quality of the crane, which accompanied the sale of the crane, was

signed by defendant Goodman in his representative capacity and defendant Goodman admitted his participation in the sale. The evidence supports the court's finding to that effect and its conclusion that defendant Goodman is personally liable for the conversion that sale caused.

[4]   The final question for consideration is whether damages were properly determined. Damages for conversion are measured by the fair market value of the chattel at the time and place of conversion, plus interest. *Crouch v. Trucking Co.*, 262 N.C. 85, 136 S.E. 2d 246 (1964); *E-B Grain Co. v. Denton*, 73 N.C. App. 14, 325 S.E. 2d 522, *disc. rev. denied*, 313 N.C. 598, 330 S.E. 2d 608 (1985). Fair market value has been described as the price a buyer who was willing, but not compelled, to buy would pay a seller who was willing, but not compelled, to sell. *Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E. 2d 219 (1959); *City of Kings Mt. v. Cline*, 19 N.C. App. 9, 198 S.E. 2d 64 (1973).

Defendant Goodman argues that Esteel did not present sufficient evidence to allow the court to reasonably ascertain the fair market value of the machine. A plaintiff must establish by evidence such facts as will furnish a basis for determination of damages. *Midgett v. Highway Commission*, 265 N.C. 373, 144 S.E. 2d 121 (1965). The plaintiff, however, does not have to prove damages with absolute certainty, but must present evidence with sufficient completeness to permit a reasonable determination of damages. *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9 (1963); *McNair Construction Co. v. Fogle Bros. Co.*, 64 N.C. App. 282, 307 S.E. 2d 200 (1983).

In this case, the evidence with respect to fair market value consisted of the amount which Esteel had paid for the crane, the sale price contained in the agreement between Esteel and Goodman & Sons, and the cost of repairs and maintenance performed on the machine while in the possession of Goodman & Sons. Plaintiff offered the opinion of Mr. Schrader that the machine was worth $60,000, but the trial court declined to base its decision on that evidence, finding that Mr. Schrader had no factual basis for his opinion. Likewise, the trial court rejected, as evidence of value, the price for which Goodman & Sons sold the machine to the Mexican company, because that price reflected extra equipment and was inflated due to the international nature of the sale. The court found:

15. That the fair market value of the machine on or about October 14, 1981, was $35,000.00 which is the same price as is described in the original lease agreement. The value of the machine at that time would have depreciated through ordinary wear and tear on the machine but the repairs made to the machine by Al J. Goodman and Sons, Inc. compensated for the normal wear and tear and depreciation which would otherwise have reduced the value of the machine or price less than the $35,000.00 option price agreed upon by the parties in the original contract. Therefore, the fair market value of the machine, after having the value enhanced by the repairs, was $35,000.00 at the time of the sale of the Pettibone Model 36 truck crane by the Defendant on or about October 14, 1981.

Evidence of the price paid for property, or its value within a reasonable time before or after the conversion, is probative of value where there has been no substantial change in the condition of the property, as is evidence of the characteristics of the property such as its condition and use. 1 H. Brandis, North Carolina Evidence 2d Rev. Ed. (1982) § 100. The trial court found, upon competent evidence, that the parties had agreed upon a sale price of $35,000 approximately two years prior to the conversion and that through repairs and maintenance the condition of the machine had not substantially changed. In our view, the two year period between the rental agreement and the conversion does not constitute such an unreasonable period of time as to render irrelevant the evidence of the machine's value at the earlier time, especially in view of the evidence with respect to repairs and maintenance and defendant Goodman's certification to the Mexican purchaser, on 9 October 1981, that the machine was in excellent condition. We hold the evidence sufficient to support the trial court's finding as to fair market value.

The judgment of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge PHILLIPS concur.