ANDREW C. WHITE AND WIFE, BARBARA W. WHITE, Plaintiffs v. COLLINS BUILD-
ING, INC., EDWIN E. COLLINS, JR., KERSEY CORPORATION, JOHNNY KERSEY,
JOSEPH LEE WILLIAMS, AND AEA & L, LLC, Defendants

No. COA10-216

(Filed 4 January 2011)

**Construction Claims— construction defects—builder—indi-
    vidual liability**

The trial court erred in dismissing plaintiffs' claim for negli-
gent construction against defendant builder in his individual
capacity. As an individual member of a limited liability company,
defendant builder was individually liable for his own torts,
including negligence.

Appeal by Plaintiffs from order entered 6 October 2009 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 2 September 2010.

*Ward and Smith, P.A., by Ryal W. Tayloe and Michael J. Parrish, for Plaintiffs.*

*Chleborowicz & Theriault, LLP, by Christopher M. Theriault and Christopher A. Chleborowicz, for Defendant Edwin E. Collins, Jr.*

STEPHENS, Judge.

**WHITE v. COLLINS BLDG., INC.**

[209 N.C. App. 48 (2011)]

### I. Procedural History

On 7 May 2009, Plaintiffs Andrew C. White and Barbara W. White filed a complaint in New Hanover County Superior Court seeking damages related to alleged construction defects in Plaintiffs' home. Plaintiffs brought various claims against the builder of the home, Collins Building, Inc. ("Collins Building"), Collins Building's president, Edwin E. Collins, Jr. ("Defendant") in his individual capacity, plumbing subcontractors Kersey Corporation and Johnny Kersey, framing subcontractor Joseph Lee Williams ("Mr. Williams"), and the developer of the home, AEA & L, LLC ("AEA"). On 29 July 2009, Defendant filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) to dismiss Plaintiffs' negligence claim against him in his individual capacity. On 6 October 2009, the trial court heard the motion and entered an order dismissing Plaintiffs' negligence claim against Defendant. Plaintiffs filed notice of appeal from the trial court's order on 5 November 2009. On 5 January 2010, Plaintiffs voluntarily dismissed all claims against Collins Building, Kersey Corporation, Johnny Kersey, Mr. Williams, and AEA without prejudice pursuant to N.C. Gen. Stat. §1A-1, Rule 41(a).

### II. Factual Background

Plaintiffs' complaint alleges the following: In May of 2003, Plaintiffs purchased a newly constructed oceanfront home in Wrightsville Beach, North Carolina from AEA, the developer of the home. AEA had contracted with Collins Building to construct the residence. Defendant, the qualifier for Collins Building on its general contractor's license and president and sole shareholder of Collins Building, oversaw and personally supervised construction of the residence.

In October of 2006, Plaintiffs began having problems with the windows and doors in the main living area of their home. Plaintiffs noticed a slight buckling of the floors underneath the glass doors and windows as well as water intrusion around the windows after a storm. Plaintiffs contacted Defendant, who informed them that the doors needed caulking. Defendant had someone apply caulk around the doors and also advised Plaintiffs to clean any sand out of the window sills to ensure a tight seal.

In late 2008 and early 2009, Plaintiffs noticed more significant water damage to the hardwood floors and trim around the windows as well as rusting window sashes and springs. When Plaintiffs had the windows professionally inspected in April and May of 2009, they

discovered severe damage to the windows and surrounding areas that required replacement of the windows.

In addition to the damaged windows, Plaintiffs' home suffered significant damage to several walls and a ceiling when four different water pipes burst between July 2007 and February 2009. In each instance, hot water pipes joined by copper fittings separated. Upon professional inspection of the plumbing system, Plaintiffs discovered that all of the hot water lines in their home had to be replaced.

Plaintiffs allege that the damage to their home and the cost of the resulting repairs were proximately caused by the negligence of Defendant in failing to properly supervise the construction of Plaintiffs' home.

### III. Discussion

By Plaintiffs' sole argument on appeal, Plaintiffs contend that the trial court erred in dismissing their negligence claim against Defendant in his individual capacity. For the reasons stated herein, we agree with Plaintiffs.

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Allred v. Capital Area Soccer League, Inc.*, 194 N.C. App. 280, 282, 669 S.E.2d 777, 778 (2008) (citation and quotation marks omitted). "Under Rule 12(b)(6), a claim should be dismissed where it appears that plaintiff is not entitled to relief under any set of facts which could be proven." *Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 299, 435 S.E.2d 537, 541 (1993) (citation omitted), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994). "This occurs where there is a lack of law to support a claim of the sort made, an absence of facts sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim." *Id.* "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Craven v. SEIU COPE*, 188 N.C. App. 814, 816, 656 S.E.2d 729, 732 (2008) (citation and quotation marks omitted).

### B. Individual Liability

"Actionable negligence occurs [] where there is a failure to exercise proper care in the performance of some legal duty which the

WHITE v. COLLINS BLDG., INC.

[209 N.C. App. 48 (2011)]

defendant owed the plaintiff, under the circumstances in which they were placed." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490; 494 (2002) (citation and quotation marks omitted). "The law imposes upon the builder of a house the general duty of reasonable care in constructing the house to anyone who may foreseeably be endangered by the builder's negligence, including a subsequent owner who is not the original purchaser." *Everts v. Parkinson*, 147 N.C. App. 315, 333, 555 S.E.2d 667, 679 (2001) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 280-81, 333 S.E.2d 222, 225-26 (1985) (plaintiffs, the third purchasers of a house, were allowed to bring an action against the builder for negligent construction of the house)); *see also Floraday v. Don Galloway Homes*, 340 N.C. 223, 456 S.E.2d 303 (1995) (owner of a house who was not the original purchaser had a cause of action against the builder for negligence in the construction of a backyard retaining wall that materially affected the structural integrity of the house). The lack of privity between a subsequent purchaser of a home and the builder of the home does not bar the purchaser's negligence claim against the builder. *Oates*, 314 N.C. at 281, 333 S.E.2d at 226. This is because although the "duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another[,] . . . the duty sued on in a negligence action is not the contractual- promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract." *Id.* at 279, 333 S.E.2d at 225 (citation and quotation marks omitted).

In this case, Plaintiffs purchased a newly constructed home from AEA, the developer of the home. AEA had contracted with Collins Building to construct the home. Even though Plaintiffs were not in privity of contract with Collins Building, under *Oates*, the lack of privity does not bar Plaintiffs from bringing an action for negligent construction against the builder. *Id.* at 281, 333 S.E.2d at 226.

Defendant argues that Plaintiffs may not bring a negligence action against him individually because any action that he took was done on behalf of, and as an agent for, Collins Building. Defendant misapprehends the law.

It is well settled that an individual member of a limited liability company or an officer of a corporation may be individually liable for his or her own torts, including negligence. *See Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990) (an officer of a corporation "can be held personally liable for torts in which he

actively participates[,]" even though "committed when acting officially" (citation and quotation marks omitted)); *Strang v. Hollowell*, 97 N.C. App. 316, 318, 387 S.E.2d 664, 666 (1990) ("It is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation."); *Esteel Co. v. Goodman*, 82 N.C. App. 692, 348 S.E.2d 153 (1986) (an officer of a corporation who commits a tort is individually liable for that tort, even though acting on behalf of the corporation in committing the act), *disc. rev. denied*, 318 N.C. 693, 351 S.E.2d 745 (1987); *Palomino Mills, Inc. v. Davidson Mills Corp.*, 230 N.C. 286, 52 S.E.2d 915 (1949);[1] *Wachovia Bank & Trust Co. v. Southern R. Co.*, 209 N.C. 304, 308, 183 S.E. 620, 622 (1935) ("[I]n this State an agent or servant, under proper allegations of negligence, which is the proximate or one of the proximate causes of the injury, plaintiff being free from blame, and proof to that effect, is liable to third parties for acts of malfeasance or nonfeasance—commission or omission—done in the scope of his employment."). Although a properly formed and maintained business entity, like a limited liability company or corporation, may provide a shield or "veil" of protection from personal liability for an individual member or officer, *see Statesville Stained Glass v. T.E. Lane Constr. & Supply Co.*, 110 N.C. App. 592, 430 S.E.2d 437 (1993), this protection is not absolute. The two most common methods of establishing personal liability in a business setting are "piercing the corporate veil" and individual responsibility for torts, such as breach of fiduciary duty, negligence, fraud, and misrepresentation. *See Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) ("[C]ourts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity."); *Hollowell*, 97 N.C. App. at 318, 387 S.E.2d at 666 ("It is well settled that one is personally liable for all torts committed

---

1. " '[I]t is thoroughly well settled that a man is personally liable for all torts committed by him, consisting in misfeasance, as fraud, conversion, acts done negligently, etc., notwithstanding he may have acted as the agent or under directions of another'; that 'this is true to the full extent as to torts committed by officers or agents of a corporation in the management of its affairs'; that 'the fact that the circumstances are such as to render the corporation liable is altogether immaterial'; that 'the person injured may hold either liable, and generally he may hold both as joint tort-feasors'; that 'corporate officers are liable for their torts, although committed when acting officially'; and that the officers 'are liable for their torts regardless of whether the corporation is liable.' " *Id.* at 292, 52 S.E.2d at 919 (quoting *Minnis v. Sharpe*, 198 N.C. 364, 367, 151 S.E. 735, 737 (1930)).

by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation."). Moreover, "the potential for corporate liability, in addition to individual liability, does not shield the individual tortfeasor from liability. Rather, it provides the injured party a choice as to which party to hold liable for the tort." *Hollowell*, 97 N.C. App. at 318-19, 387 S.E.2d at 666.

In *Wilson v. McLeod Oil Co.*, *supra*, the North Carolina Supreme Court addressed a company president's personal liability for negligence. Plaintiffs alleged that their water wells had been contaminated by gasoline leaked from nearby gas stations. Plaintiffs brought suit against, *inter alia*, the president of an oil company that had installed underground storage tanks for and supplied gasoline to one of the gas stations. 327 N.C. at 500-01, 398 S.E.2d at 590. The forecast of the evidence showed that the president

> personally participated in the activities surrounding the delivery and sale of gasoline at the . . . property. He signed the contract which allowed [the company] to install the tanks on the property; he generally oversaw the conducting of business there by [the company] as well as by [another company], which serviced the tanks and equipment and performed any repairs; and he signed the papers arranging for the deliveries of the gasoline to the property, supervised the account, and was the person contacted about the loss of gasoline from the tanks[.]

*Id.* at 518, 398 S.E.2d at 600. The president asserted that he could not be held personally liable for any negligence since he had been acting as a corporate officer. However, the Court held that "a corporate officer can be held personally liable for torts in which he actively participates." *Id.* (citing *Minnis*, 198 N.C. at 367, 151 S.E. at 737). "Furthermore, corporate officers 'are liable for their torts regardless of whether the corporation is liable.' " *Id.* (quoting *Minnis*, 198 N.C. at 367, 151 S.E. at 737). Thus, even though he was acting in his corporate capacity, the president's participation in the activities which were alleged to have led to the gas leaks was sufficient to allow plaintiffs' tort claims against the president in his individual capacity to survive summary judgment.

Similarly in *Esteel Co. v. Goodman*, *supra*, this Court addressed whether a defendant, the president of a corporation charged with the conversion of a crane, could be held personally liable for the conversion. The certificate guaranteeing the quality of the crane, which accompanied the sale of the crane which caused the conversion,

was signed by the president in his representative capacity, and the president admitted his participation in the sale. Reiterating the rule that "an officer of a corporation who commits a tort is individually liable for that tort, even though the officer may have acted on behalf of the corporation in committing the wrongful act[,]" 82 N.C. App. at 697, 348 S.E.2d at 157, this Court held that the president was personally liable for the conversion caused by the sale of the crane.

Appellate courts in this State have not addressed in a published opinion the imposition of individual tort liability on a corporate officer in a construction context. However, courts in other jurisdictions have addressed this issue. In *Sturm v. Harb Dev., LLC*, 2 A.3d 859 (Conn. 2010), plaintiff-homeowners brought an action against Harb Development, LLC ("Harb Development") and its principal, John J. Harb ("Mr. Harb"), alleging that their poor workmanship in the construction of the plaintiffs' new home constituted, *inter alia*, negligence and fraud, and violated Connecticut General Statutes. *Id.* at 863. Mr. Harb moved the trial court to dismiss the allegations against him personally, seeking the protection of his LLC, Harb Development. Mr. Harb argued that absent facts sufficient to pierce the veil of protection of the LLC, Mr. Harb personally was immune from liability. *Id.* at 864.

The trial court granted the motion to dismiss primarily on the ground that no facts were alleged in the complaint to pierce the veil of the LLC. *Id.* at 863. However, the Connecticut Supreme Court concluded that the trial court "improperly required the plaintiffs to plead facts sufficient to pierce the corporate veil in order to establish [Mr. Harb's] personal liability." *Id.* at 864. The Court stated:

> It is well established that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or partici-pates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby. . . . Thus, a director or officer who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort.

*Id.* at 866-67 (citations and quotation marks omitted).

Although the Court ultimately found that there were insufficient facts alleged in the complaint to establish the negligence claim against Mr. Harb personally, the Court rejected the argument that Mr.

Harb could not be personally liable for negligence merely because he was a member of an LLC.

Similarly, in *Brown v. Rentz*, 441 S.E.2d 876 (Ga. App. 1994), plaintiffs, purchasers of a new home, filed an action against Rentz Builders, Inc., Lonnie S. Rentz ("Mr. Rentz"), a shareholder, director, and officer in Rentz Builders, Inc., and Linda Rentz, the corporate secretary for Rentz Builders, Inc. Plaintiffs alleged claims for negligent construction of the residence and negligent misrepresentation in the sale of the residence to plaintiffs. The trial court granted the individual Rentzes' motions for summary judgment on the ground that plaintiffs had presented no evidence showing that either of the Rentzes, in their individual capacities, had participated in the sale or had disregarded the corporate entities they represented. *Id.* at 877.

The Georgia Court of Appeals agreed that the corporate veil should not have been pierced and "that the evidence established that [Mr. Rentz] did not build the house in his individual capacity." *Id.* at 878. However, the Court explained:

> [I]t is well established that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, (and) an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.

*Id.* (citation and quotation marks omitted).

The record before the Court showed that "[Mr.] Rentz oversaw the subcontract work, did 'small stuff'—'trim work,' 'a little of the paint work,' responded personally when the Browns called, and personally performed some repair work they now claim was defective." *Id.* The Court thus concluded that the jury would have been authorized to find Mr. Rentz personally liable for negligent construction "because he specifically directed the manner in which the house was constructed or participated or cooperated in its negligent construction." *Id.* (citation and quotation marks omitted).

The *Sturm* and *Brown* cases are not binding authority on this Court, but their analyses are instructive in this case. Similar to Mr. Harb and Mr. Rentz, Defendant in this case is the president and sole shareholder of Collins Building, the company responsible for constructing Plaintiffs' home. Plaintiffs allege that Defendant "oversaw and personally supervised the day-to-day construction of [Plaintiffs']

residence." Plaintiffs further allege that Defendant was negligent in "failing to properly supervise the construction of the residence, including, but not limited to, failing to properly supervise the installation of the doors and windows, the flashing around the doors and windows, and the house wrap" and in "fail[ing] to properly supervise the design and installation of the plumbing system, including the hot water lines and other system components."

Similar to *Sturm* and *Brown*, Defendant moved the trial court to dismiss the allegations against him personally, seeking the protection of his corporation, Collins Building. Defendant argued before the trial court, and argues on appeal, that absent facts sufficient to pierce the veil of protection of the corporation, Defendant personally is immune from liability.

However, as in Connecticut and Georgia, it is well-settled law in North Carolina

that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation. Furthermore, the potential for corporate liability, in addition to individual liability, does not shield the individual tortfeas or from liability. Rather, it provides the injured party a choice as to which party to hold liable for the tort.

*Hollowell*, 97 N.C. App. at 318-19, 387 S.E.2d at 666 (internal citations omitted). As in *Sturm*, Defendant's argument "fails . . . to acknowledge our well established common-law exception to individual liability in a corporate context for an individual's tort liability." *Sturm*, 2 A.3d at 868. Accordingly, based on well-settled law in North Carolina, Defendant may be personally liable for negligence if the facts support a negligence claim against him.

Defendant relies on this Court's unpublished opinion, *Nudelman v. J.A. Booe Bldg. Contractor*, 2003 N.C. App. LEXIS 509, No. COA02-267 (Mar. 4, 2003), which relies on *Statesville Stained Glass v. T.E. Lane Construction & Supply, supra*, to support his contention that he cannot be held personally liable for the alleged negligence in this case. We first note that as an unpublished case, *Nudelman* is not controlling authority. *See Day v. Brant*, —— N.C. App. ——, ——, 697 S.E.2d 345, 356 (2011). Nonetheless, Defendant's reliance is misplaced for the following reasons.

**WHITE v. COLLINS BLDG., INC.**

[209 N.C. App. 48 (2011)]

In *Statesville*, plaintiff filed a complaint against T.E. Lane Construction and Supply Co., Inc. ("Lane Construction"), Temple Construction Co. ("Temple Construction"), and Terrence E. Lane ("Lane"), the sole shareholder and chief executive officer of both companies, in his individual capacity. 110 N.C. App. at 593, 430 S.E.2d at 438. Plaintiff sought payment of a $15,374.00 debt owed for stained glass it had manufactured for Lane Construction pursuant to a contract between plaintiff and Lane Construction. Following a bench trial, the court concluded that the evidence supported disregarding the corporate entities of both Lane Construction and Temple Construction and extending liability for the debt to Lane, in his individual capacity. *Id.* at 595, 430 S.E.2d at 439.

On appeal, this Court made the following observations about the propriety of piercing the corporate veil:

> [I]n a close corporation, the principal or sole stockholder [is] permitted by law to play an active role in management, [and] may deal with third parties without incurring personal liability, as long as the separate corporate identity is maintained. In cases arising out of contracts with a close corporation, where another party has voluntarily dealt with the corporation, corporate separateness is usually respected. This is so because [i]f the other contracting party has agreed to look to the corporation, and thus only to the assets that have been contributed to it, courts understandably are reluctant to remake the bargain by permitting the other party to pierce the corporate veil and pursue the shareholders' noncorporate assets.

*Id.* at 597, 430 S.E.2d at 440 (citations and quotation marks omitted). This Court found that the parties had stipulated that plaintiff contracted with Lane Construction and that the trial court's findings of fact that "Lane was the chief executive officer, sole shareholder, and 'controller' of Lane Construction" and that "plaintiff at all times dealt with Lane" were supported by the evidence. *Id.* However, we concluded that "these findings, even though supported by the evidence, cannot provide the basis for the court's conclusion of law that '[Lane Construction] had [no] will or existence separate and apart from Lane,' or that '[t]he stock control as exercised by Lane justifies piercing the corporate veil of [Lane Construction].' " *Id.* at 598, 430 S.E.2d at 441. This Court explained:

> [P]laintiff presented no evidence that Lane used Lane Construction to conduct personal business or for personal

benefit. Furthermore, plaintiff's bare assertion that Lane used Lane Construction to defraud plaintiff, without supporting evidence, does not support the court's conclusion that 'Lane exercised excessive control on [Lane Construction], at least partially, in order to escape liability in violation of plaintiff's rights.' To the contrary, the evidence presented by plaintiff shows only that Lane and the other members of the board of directors agreed to dissolve Lane Construction due to the financial condition of the corporation, and that its assets were liquidated to help pay off company debts.

*Id.* (internal citation omitted). This Court thus held "that the trial court erred in concluding that the corporate entity of Lane Construction should be disregarded." *Id.*[2] Accordingly, the trial court's judgment against Lane, individually, was reversed.

In *Nudelman*, plaintiffs entered into a contract with J.A. Booe Building Contractor, Inc. ("Booe Building") to construct their residence. After the home was completed, plaintiffs discovered defects in the home's synthetic stucco exterior and brought suit against both Booe Building and its president, James Booe (defendant"). *Id.* at *1-4. Plaintiffs alleged, *inter alia*, that defendant " 'was careless and negligent . . . in conducting and supervising the construction of plaintiffs' house.' " *Id.* at *4. "Plaintiffs [sought] to pierce Booe Building's corporate veil and hold defendant personally liable for the alleged defects in their home[.]" *Id.* at *7.

Relying on *Statesville*, this Court stated:

[P]laintiffs seek to hold defendant individually liable for the alleged construction defects in their home, even though defendant, individually, was not a party to the construction contract. The contract itself imposed no obligations on defendant Booe individually. Throughout construction, defendant served as an officer, employee, and agent of Booe Building and acted within the scope and course of his employment. The fact that defendant had an ownership interest in Booe Building and exercised control over the corporation does not, without more, subject him to personal liability for the liabilities incurred by Booe Building. Under Statesville, plaintiffs could maintain a negligence action against defendant in his individual capacity only if they showed

---

2. We further held that the trial court's determination that the corporate entity of Temple Construction should be disregarded was contrary to law. *Id.*

(1) that defendant acted outside the course and scope of his employment; or (2) that the corporation was a sham (thereby justifying the piercing of the corporate veil). Upon review, we discern no such showing by plaintiffs.

*Id.* at *11-12.

We first note that *Statesville* involved a claim for payment of a business debt arising out of a breach of contract claim, and did not involve a negligence action. Thus, *Nudelman's* assertion that "[u]nder *Statesville*, plaintiffs could maintain a *negligence action* against defendant in his individual capacity only if they showed (1) that defendant acted outside the course and scope of his employment; or (2) that the corporation was a sham (thereby justifying the piercing of the corporate veil)[,]" *id.* at *11 (emphasis added), is an inaccurate representation of the holding in *Statesville*.

Moreover, following the analysis under *Statesville*, the *Nudelman* Court addressed Booe's liability solely under a piercing the corporate veil theory and did not discuss Booe's personal liability for negligence under the common-law rule applied in *Wilson, Esteel,* and *Hollowell*.[3] Because the common-law rule applies even in the absence of facts sufficient to pierce the corporate veil, the Court's analysis in *Nudelman* is not applicable here.

As the allegations of Plaintiffs' complaint, treated as true, adequately state a claim against Defendant for negligence, the trial court erred in granting Defendant's motion to dismiss. Accordingly, the order of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges ELMORE and JACKSON concur.

---

3. The *Nudelman* Court further noted that plaintiffs could not maintain an action against defendant in tort even if he was the contractor as plaintiffs were the promisees in the construction contract, and "[o]ur Supreme Court has stated that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.' " *Id.* at *12 (citation omitted). This analysis is inapplicable in the present case, however, as Plaintiffs are not promisees of a contract with Defendant.