NO. COA13-1083

NORTH CAROLINA COURT OF APPEALS

Filed:  18 March 2014

JANE HEATON-SIDES,
    Plaintiff,

    v.                             Granville County
                                   No. 11 CVS 1065

(1) TORETTA SNIPES individually,
and in her capacity as Vice
President of STATE EMPLOYEES'
CREDIT UNION,

                                            &amp;

(2) STATE EMPLOYEES' CREDIT UNION,

                                            &amp;

(3) JAYME CURRIN, individually,
and in her capacity as President
of AMERICAN DREAM PROPERTIES,
INC.,

                                            &amp;

(4) AMERICAN DREAM PROPERTIES,
INC.,
    Defendants.


    Appeal by plaintiff from an order entered 22 May 2013 by Judge Henry W. Hight, Jr. in Granville County Superior Court. Heard in the Court of Appeals 17 February 2014.


    *Michael A. Jones, for plaintiff-appellant.*

    *Hopper, Hicks & Wrenn PLLC, by James C. Wrenn, Jr. and Gerald T. Koinis, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiff Jane Heaton-Sides filed a complaint against defendants alleging claims for conversion, negligent and intentional infliction of emotional distress, punitive damages, and unfair and deceptive trade practices. The claims against defendants State Employees Credit Union ("SECU") and Toretta Snipes were dismissed by order dated 1 February 2013 as a result of plaintiff's failure to respond to discovery. Plaintiff subsequently voluntarily dismissed with prejudice all of her claims against defendants Jayme Currin and American Dream Properties except her claim for conversion.

After a bench trial, the trial court made the following relevant findings of fact, all of which are supported by the evidence presented at the trial. SECU foreclosed on plaintiff's personal residence located at 1500 Cash Road in Creedmoor, North Carolina and was later placed in lawful possession of the residence on 1 April 2011 at 9:00 a.m. On that date, plaintiff and her husband were in the process of moving out of the residence. Plaintiff, her husband, and SECU agreed that plaintiff and her husband could continue moving out until 3:00 p.m. that day. Around 3:00 p.m., Ms. Snipes, an employee of

SECU, informed plaintiff and her husband that if they wanted to take any additional personal property from the residence they should inform her or Ms. Currin of American Dream, a property manager for SECU, by the close of business on 4 April 2011.[1] Furthermore, Ms. Currin testified that when she walked through the residence on 1 April 2011 it did not appear that anything of value was left behind. Plaintiff did not inform anyone that she wanted to retrieve additional personal property from the residence until 7 April 2011. By that time, any remaining property in the residence had been disposed of and plaintiff was not able to retrieve any additional personal property. Plaintiff testified that, as a result, she was missing some household items that would cost her $10,272 to replace as well as notes and outlines for several children's books ("the papers") that she thought had a value of $75,400 as reasonable compensation to her for the amount of time she spent working on them (20 hours per week x 52 weeks x 10 years x $7.25 per hour = $75,400). Plaintiff, however, did not offer any testimony about the fair market value of the household items or the papers.

---

[1] We note that the trial court refers to both "Monday, April 3, 2011" and "Monday, April 4, 2011" in its order. The date is not disputed in this action, but we take judicial notice, by reference to a calendar, that the first Monday of April, 2011 was the 4th.

Based on this evidence, the trial court concluded that plaintiff did not show a wrongful conversion by defendants because she had abandoned the personal property in the residence when she failed to contact anyone about removing additional personal property by 4 April 2011. Furthermore, the trial court concluded that even if plaintiff had proven her conversion claim, she had failed to prove actual damages. Plaintiff timely filed notice of appeal from the trial court's order dismissing her conversion claim with prejudice.

_____

A conversion claim essentially requires two elements: "ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). On appeal, plaintiff argues that the trial court erred in dismissing her conversion claim for failure to show a wrongful conversion by defendants because defendants violated N.C.G.S. § 42-25.9(g) when they disposed of plaintiff's personal property before the expiration of the statutory ten-day waiting period. We agree.

When we review an order issued after a bench trial we determine "whether the trial judge's underlying findings of fact

are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusion of law." *Holloway v. Holloway*, __ N.C. App. __, __, 726 S.E.2d 198, 204 (2012). However, we review the trial judge's conclusions of law *de novo*. *Id.*

In this case, plaintiff's residence was sold at a foreclosure sale and SECU was later placed in possession of the residence pursuant to N.C.G.S. § 45-21.29(l). This statute provides that the purchaser of the foreclosed property "shall have the same rights and remedies in connection with the execution of an order for possession and the disposition of personal property following the execution as are provided to a landlord under North Carolina law, including Chapters 42 and 44A of the General Statutes." *Id.* Thus, section 45-21.29(l) directs us to Chapter 42.

N.C.G.S. § 42-25.9(g) states:

> Ten days after being placed in lawful possession by execution of a writ of possession, a landlord may throw away, dispose of, or sell all items of personal property remaining on the premises . . . . During the 10-day period after being placed in lawful possession by execution of a writ of possession, a landlord may move for storage purposes, but shall not throw away, dispose of, or sell any items of personal

> property remaining on the premises unless otherwise provided for in this Chapter. Upon the tenant's request prior to the expiration of the 10-day period, the landlord shall release possession of the property to the tenant during regular business hours or at a time agreed upon.

N.C. Gen. Stat. § 42-25.9(g) (2011) *amended by* 2012 N.C. Sess. Laws 73, 74, ch. 17, §§ 2(a), 2(b), *amended by* 2013 N.C. Sess. Laws 309, 311 ch. 334, § 4.

Based on the language of this statute, the landlord or buyer in a foreclosure sale who is placed in lawful possession of a residence may move personal property in the residence to storage but cannot dispose of the property for ten days after being placed in lawful possession. Furthermore, the landlord or buyer must make the personal property available to the tenant or former owner upon their request during the ten-day period.

Defendants assert that they met the statutory requirements of N.C.G.S. § 42-25.9 by: (1) allowing plaintiff to continue removing her personal property on 1 April 2011 when they were placed in lawful possession, and (2) agreeing with plaintiff and her husband that if they wanted additional personal property from the residence they should notify defendants by the end of business on Monday 4 April 2011. In essence, defendants appear to argue that plaintiff waived the ten-day waiting period when

she agreed to contact defendants by the end of business on 4 April 2011, and that plaintiff was guaranteed only one opportunity to retrieve her personal property. These arguments fail.

In contract law there are generally two types of rules: default rules and immutable rules. Default rules are rules that "parties can contract around by prior agreement." Ian Ayres & Robert Gertner, *Filling Gaps in Incomplete Contracts: An Economic Theory of Default Rules*, 99 Yale L.J. 87, 87 (1989). Immutable rules, by comparison, are those rules that "parties cannot change by contractual agreement." *Id.* While these terms usually refer to the Uniform Commercial Code, they demonstrate the principle that some rules may be avoided by contract while others may not. The ten-day waiting period in N.C.G.S. § 42-25.9(g) cannot be avoided by contract because N.C.G.S. § 42-25.8 provides: "Any lease or contract provision contrary to this Article shall be void as against public policy." Thus, plaintiff and defendants could not satisfy the statutory ten-day waiting period by agreeing to a modified timeline because such an agreement violates public policy and is void.

Furthermore, nothing suggests that a tenant or former owner has only one opportunity to obtain possession of their personal

property during the ten-day period. While the statutory language "[u]pon the tenant's request" is singular, it seems counterintuitive to reason that a former owner of property has only one chance in the ten-day period to obtain physical possession of their personal property before it is disposed of. As a result, we believe that plaintiff could have obtained possession of her personal property on 7 April 2011 even though she had been allowed to remove personal property on 1 April 2011. Thus, we reverse the trial court's conclusion of law that plaintiff failed to prove her conversion claim.

Once a party has stated a claim for conversion, the party must present evidence that will provide a basis for determining damages. *Marina Food Assocs., Inc. v. Marina Rest., Inc.*, 100 N.C. App. 82, 94, 394 S.E.2d 824, 831, *disc. rev. denied*, 327 N.C. 636, 399 S.E.2d 328 (1990). For a conversion claim, damages are determined by the "fair market value of the converted property at the time of the conversion, plus interest." *Bartlett Milling Co., v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 81, 665 S.E.2d 478, 485, *disc. rev. denied*, 362 N.C. 679, 669 S.E.2d 741 (2008). Fair market value is the price that a willing buyer would pay a willing seller when neither party is compelled to take part in the

transaction. *Esteel Co. v. Goodman*, 82 N.C. App. 692, 698, 348 S.E.2d 153, 157 (1986), *disc. rev. denied*, 318 N.C. 693, 351 S.E.2d 745 (1987).

As discussed earlier, a trial court's findings of fact are conclusive on appeal if they are supported by competent evidence. *Holloway*, __ N.C. App. at __, 726 S.E.2d at 204. In this case, the trial judge found that plaintiff did not attempt to determine the fair market value of the household goods and offered no testimony as to the fair market value of the papers. These findings are supported by the evidence. At trial, plaintiff testified that the *replacement cost* of the household items was $10,272. Replacement cost is not the fair market value. The fair market value of the household goods would be the value of the goods at the time of their conversion, not the cost of buying replacement goods. Plaintiff did not testify as to the value of the goods at the time of their conversion, and as a result, failed to offer evidence of their fair market value.

Furthermore, plaintiff offered no evidence as to the fair market value of the papers. As stated earlier, fair market value is the price a willing buyer would pay a willing seller for goods. *See Esteel*, 82 N.C. App. at 698, 348 S.E.2d at 157.

Plaintiff testified that she thought that the papers had a value of $75,400 because that would be reasonable compensation for the amount of time she worked on them. However, to prove the fair market value of the papers plaintiff would have to demonstrate how much a willing buyer would pay her for the papers.

During the bench trial, plaintiff's counsel relied on Pattern Jury Instruction 810.66 to argue that $75,400 represented the "intrinsic" value of the papers. This argument was not made on appeal; however, if plaintiff had made this argument on appeal it would have failed. The note to Pattern Jury Instruction 810.66 states: "Use this instruction where damages measured by market value would not adequately compensate the plaintiff." N.C.P.I.—Civ. 810.66 (gen. civ. vol. 2013). Thus, intrinsic value was not the appropriate value to determine plaintiff's damages because there was no evidence of the fair market value of the papers or that the fair market value of the papers would not adequately compensate plaintiff. The trial court correctly found that plaintiff had presented no evidence of the fair market value of the household goods or the papers, and correctly concluded that plaintiff had failed to prove actual damages.

Actual damages, however, are not an essential element of a

conversion claim. *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). Consequently, even if a plaintiff fails to prove actual damages, she can still recover nominal damages. *See Fagan v. Hazzard*, 34 N.C. App. 312, 313-14, 237 S.E.2d 916, 917 (1977) (affirming a trial court's award of one dollar as nominal damages when the plaintiff proved conversion but not actual damages). Accordingly, plaintiff is entitled to nominal damages because she proved her conversion claim but not actual damages.

Therefore, we reverse the trial court's holding that plaintiff failed to prove conversion, affirm the determination that plaintiff failed to prove actual damages, and remand this case to the trial court for entry of a judgment awarding plaintiff nominal damages.

Affirmed in part, reversed in part and remanded.

Judges ELMORE and HUNTER, JR. concur.