Holcomb v. Landquest Ltd. Liab. Co., 2017 NCBC 35.

STATE OF NORTH CAROLINA
COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 10147

JONES D. HOLCOMB,

        Plaintiff,

v.

LANDQUEST LIMITED LIABILITY
COMPANY, LSTAR
MANAGEMENT, LLC, STEVEN J.
VINING, and KYLE V. CORKUM

        Defendants.

**OPINION AND ORDER ON MOTION
FOR JUDGMENT ON THE PLEADINGS**

THIS MATTER comes before the Court on Defendants Landquest Limited Liability Company ("Landquest"), LStar Management, LLC ("LStar"), Steven J. Vining ("Vining"), and Kyle V. Corkum's ("Corkum") (collectively, "Defendants") Motion for Judgment on the Pleadings ("Motion for Judgment") pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)").

THE COURT, having considered the Motion, the briefs in support of and in opposition to the Motion, the oral arguments of counsel presented at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part for the reasons set forth below.

> *Monteith & Rice, PLLC by Charles E. Monteith, Jr., Esq., for Plaintiff Jones D. Holcomb.*

> *Ellis & Winters LLP by Thomas H. Segars, Esq., and Jeremy Falcone, Esq. for Defendants Landquest Limited Liability Company, LStar Management LLC, Steven J. Vining, and Kyle V. Corkum.*

McGuire, Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  The Court does not make findings of fact on a motion for judgment on the pleadings; rather, "[a]ll allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). The following facts, construed in Plaintiff's favor, are assumed to be true for purposes of the Motion for Judgment.

2.  Plaintiff Jones D. Holcomb is a former employee of Landquest and LStar. Landquest was a Delaware limited liability company, and is the predecessor to LStar, a North Carolina limited liability company (hereinafter, the Court will refer to Landquest and LStar collectively as "Landquest"). Plaintiff began employment with Landquest on or about September 20, 2008 as a Vice President of Finance. Vining is a manager at Landquest and Corkum is the managing partner of Landquest. Both were former employees of Landquest.

3.  On September 30, 2008, Plaintiff executed an employment agreement with Landquest that outlined his compensation. The agreement provided that Plaintiff would be paid an annual salary of $100,000.00, subject to federal and state withholding requirements. (Defs.' Answer, Ex. B, (hereinafter, "Empl. Agreement") ¶ 3(a).) The agreement further provided that "[u]ntil such time as Landquest's cash flow allows payment of this salary, the salary shall accrue. . . . [and] all accrued salary shall be due and payable within 12 months of the date of this Agreement." (*Id.*)

4. In January 2009, Plaintiff's salary was increased to $125,000.00.

5. In June 2009, Landquest began making salary payments to Plaintiff.

6. In or around November 2009, Landquest reduced salary payments to Plaintiff to the amount Plaintiff would have received if federal and state taxes had been withheld. Landquest, however, did not withhold federal and state taxes from the reduced salary payments. Vining and Corkum promised Plaintiff that, when Landquest was financially able to do so, it would "'true up' its payments to Plaintiff by paying the appropriate salary amount that would have been paid if Landquest had deducted the necessary tax withholdings." (Compl. ¶ 15.)

7. In November 2009, Vining and Corkum held a staff meeting and informed Landquest's employees that the company would stop withholding taxes from the wages paid to employees and that the employees could expect a check "for the net amount of pay that such employees would have received if taxes and required withholdings had been deducted from the amount of wages actually due to the employees." (Compl. ¶ 16.) At least two Landquest employees resigned following Landquest's decision to not withhold taxes from its employees' pay. (Compl. ¶ 17.)

8. Plaintiff chose not to resign his employment and agreed to continue working for Landquest in reliance upon Vining's assurance that Landquest would pay Plaintiff the full amount of salary due and make the necessary tax withholdings from all salary payments due. (Compl. ¶ 18.)

9. On or around January 2, 2011, Vining and Corkum informed Plaintiff that "he would receive a distribution of profits from projects that closed during [his]

employment with [Landquest]." (Compl. ¶ 20.) The profit distributions were to be made under written plan agreed to among Landquest's members entitled "Addendum to Operating Agreement of [Landquest] Management, LLC" (Defs.' Answer, Ex. C., (hereinafter, "Economic Interest Plan").) The Economic Interest Plan allows certain employees to receive a pro rata share of profit distributions, but provides that an employee would not receive a distribution if their employment terminated for cause. (Economic Interest Agreement ¶ 3(c).)

10. In October 2012, Vining again assured Plaintiff that LStar would eventually pay him the full amount of salary that was due to him with the necessary tax withholdings. Plaintiff agreed to continue working for Landquest in reliance on this promise. (Compl. ¶ 24.)

11. In January 2013, Corkum informed Plaintiff that Landquest planned to terminate his employment. Corkum told Plaintiff that Landquest "would not consider Plaintiff's termination to be for cause and thus ensure Plaintiff would receive the previously promised distribution of profits if Plaintiff agreed to continue working for [Landquest] for an additional two months." (Compl. ¶ 24.) Plaintiff agreed to continue working for Landquest "based upon Corkum's statement." (Compl. ¶ 25.)

12. On March 11, 2013, Landquest terminated Plaintiff's employment. Landquest did not pay Plaintiff the full amount of his salary and did not make the appropriate tax withholdings from Plaintiff's salary prior to his termination.

13. On May 15, 2015, Plaintiff filed a complaint in Wake County Superior Court ("2015 Complaint"). In the 2015 Complaint, Plaintiff alleged claims for fraud and negligent misrepresentation against the Defendants.

14. On August 5, 2015, Defendants filed a motion to dismiss the 2015 Complaint.

15. On August 17, 2015, Plaintiff filed a voluntary dismissal of the 2015 Complaint without prejudice.

16. On August 12, 2016, Plaintiff initiated the current action by filing a complaint ("2016 Complaint"). The 2016 Complaint alleges the same two claims made in the 2015 Complaint: fraud and negligent misrepresentation. Plaintiff bases his claims on allegations that "[i]n November 2009, October 2012 and January, 2013, Vining and Corkum" told Plaintiff that it was (a) Defendants' intention to pay him the full salary which he was promised; (b) Defendants' intention to reimburse him for any tax liability arising from Defendants' failure to make necessary tax withholdings from the salary payments that Plaintiff received; and, (c) Defendants' intention to pay Plaintiff a distribution of profits. (Compl. ¶¶ 31, 39) Plaintiff alleges that at the time they made the representations, Vining and Corkum either knew they were false or failed to exercise reasonable care in ascertaining the truth of the representations. (Compl. ¶¶ 33, 40.) Plaintiff relied on the false representations in continuing to work for Defendants. (Compl. ¶¶ 33, 42.)

17. On October 18, 2016, Defendants filed a Notice of Designation to the North Carolina Business Court, and the case was designated a mandatory complex

business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."). On October 20, 2016, the case was assigned to the undersigned Special Superior Court Judge for Complex Business Cases by Order of Chief Judge James L. Gale.

18.     On November 4, 2016, Defendants filed a collective Answer of All Defendants ("Answer"). Defendants attached to and incorporated the 2015 Complaint (Exhibit A), the Employment Agreement (Exhibit B), and the Economic Interest Plan (Exhibit C).

19.     On November 11, 2016, Defendants filed the Motion for Judgment, seeking dismissal of all of Plaintiff's claims. Plaintiff filed a response in opposition to the Motion for Judgment, and Defendants replied. On January 17, 2017, the Court held a hearing on the Motion for Judgment.  The Motion for Judgment is now ripe for disposition.

DISCUSSION

20.     Defendants move for judgment on the pleadings on the grounds that: (a) Plaintiff's claims are barred by the economic loss doctrine; (b) Plaintiff has not sufficiently alleged his claims in the 2016 Complaint; (c) Plaintiff's claims are barred by the applicable three-year statute of limitations because Plaintiff's claim is not "saved" by Rule 41(a); and (d) Plaintiff cannot, as a matter of law, maintain claims for fraud and negligent representation against Vining and Corkum in their individual capacities.

21. Defendants move for judgment on the pleadings pursuant to Rule 12(c). "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Id.* "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion." *Id.* (citations omitted). "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]" *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3, 745 S.E.2d 316, 319 (2013) (citation omitted).

22. In ruling on a motion under Rule 12(c), the Court may consider "'only the pleadings and exhibits which are attached and incorporated into the pleadings' in ruling on the motion." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004) (quoting *Helms v. Holland*, 124 N.C. App. 629, 633, 478 S.E.2d 513, 516 (1996)).

23. As a preliminary matter, the Court concludes that it may consider the 2015 Complaint, the Employment Agreement, and the Economic Interest Plan in

deciding the Motion for Judgment. The 2016 Complaint expressly makes reference to the 2015 Complaint. *See, e.g., Coley v. North Carolina Nat'l Bank*, 41 N.C. App. 121, 126–27, 254 S.E.2d 217, 220 (1979) (holding that, on defendant's motion to dismiss, trial court properly considered a written contract referred to within, but not attached to, the plaintiff's complaint without converting motion into one for summary judgment). Further, on a Rule 12(c) motion, the Court may consider documents attached to the moving party's pleading, so long as the non-moving party made admissions regarding the documents. *Estate of Means ex rel. Means v. Scott Elec. Co. Inc.*, 207 N.C. App. 713, 717, 701 S.E.2d 294, 297 (2010). The court may also consider documents that memorialize the events described in the complaint. *Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 546, 676 S.E.2d 481, 486 (2009) (affirming consideration of a document created after the complaint was filed because the complaint "ma[de] clear reference to the events . . . memorialized in the [document]" and the "trial court did not err in considering the [document] in the context of defendants' Rule 12(c) motion to dismiss"). The 2016 Complaint describes, and relies on, the terms of the Employment Agreement and the Economic Interest Plan as the basis underlying Plaintiff's claims. (Compl. ¶¶ 12 and 20.)[1] The 2015 Complaint, the Employment Agreement, and the Economic Interest Plan are properly considered in deciding the Motion for Judgment.

A. *Defendants' contention that the economic loss doctrine bars Plaintiff's claims.*

---

[1] In fact, the 2016 Complaint appears to be carefully drafted to remove express references to the Employment Agreement which were contained in the 2015 Complaint to avoid application of the economic loss doctrine which was raised by Defendants in their motion to dismiss the 2015 Complaint. (Compl. ¶ 12.)

24.     Defendants contend that Plaintiff's claims for fraud and negligent misrepresentation are barred by the economic loss doctrine because Plaintiff fails to allege an independent duty owed to him outside the contractual obligations of the Employment Agreement and Economic Interest Plan. Plaintiff, however, argues that the North Carolina Court of Appeals' recent decision in *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 2016 N.C. App. LEXIS 1325 (Dec. 20, 2016) precludes application of the economic loss doctrine to his fraud claim.[2]

25.     The North Carolina Supreme Court, in its seminal opinion on the economic loss rule, stated: "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978). In *Ports Authority*, the Court held that the plaintiff was barred from bringing a negligence claim against a general contractor who improperly constructed two buildings where the parties had a contract that limited the remedies available for claims between the parties. *Id.* at 81–82, 240 S.E.2d at 350–51. Decisions of the Court of Appeals subsequent to *Ports Authority* have stated the economic loss doctrine in terms that suggest its applicability to claims beyond claims for negligence and specifically to intentional torts. *See, e.g., Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992) ("[A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when

_____

[2] *Bradley Woodcraft* was decided while the parties were briefing this Motion.

the injury resulting from the breach is damage to the subject matter of the contract."); *Warfield v. Hicks*, 91 N.C. App. 1, 10, 370 S.E.2d 689, 694 (1988) (same). Despite this language, other North Carolina appellate decisions have not applied the economic loss doctrine to bar claims other than ones for negligence. *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 783 S.E.2d 35, 40–41, 2016 N.C. App. LEXIS 238, at *13–14 (Mar. 1, 2016) ("Since *Ports Authority* was decided, our appellate courts have applied the economic loss rule on a number of occasions to reject analogous *negligence* claims."; emphasis added).

26. This Court and federal courts interpreting North Carolina law, however, have applied the economic loss doctrine to bar a variety of "tort claims that 'piggyback' breach of contract claims." *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *50 (N.C. Super. Ct. Nov. 3, 2011); *see e.g.*, *Crescent Foods, Inc. v. Evason Pharms., Inc.*, 2016 NCBC LEXIS 76, at *22–25 (N.C. Super. Ct. Oct. 5, 2016) (fraud); *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *7–12 (N.C. Super. Ct. Jan. 5, 2016) (fraud, negligent misrepresentation, negligent supervision); *Artistic Southern Inc. v. Lund,* 2015 NCBC LEXIS 113, *21–33 (N.C. Super Ct. Dec. 9, 2015) (tortious interference with contract and/or prospective economic advantage); *Akzo Nobel Coatings, Inc.,* 2011 NCBC LEXIS 42, at *47–59 (fraud, negligent misrepresentation, tortious interference with a contract and prospective advantage); *Strum v. Exxon Co., USA*, 15 F.3d 327, 330–33 (4th Cir. 1994) (fraudulent inducement); *Mecklenburg Cty. v. Nortel Gov't Sols., Inc.*, No. 3:07-CV-00320-GCM, 2008 U.S. Dist. LEXIS 110381, at *11–14 (W.D.N.C. Apr. 1, 2008) (fraud, unfair and

deceptive trade practices, negligent misrepresentation); *Gregory Woods Prods. v. Advanced Sawmill Mach. Equip., Inc.*, No. 5:06-CV-00087, 2007 U.S. Dist. LEXIS 46245, at *22–29 (W.D.N.C. June 25, 2007) (negligent misrepresentation, negligent design). These courts have held that "in order to maintain tort claims for conduct also alleged to be a breach of contract, a plaintiff must identify a duty owed by the defendant 'separate and distinct from any duty owed under a contract.'" *Forest2Market, Inc.*, 2016 NCBC LEXIS 3, at *8 (citation omitted).

27.    In *Bradley Woodcraft*, however, the Court of Appeals declared that "*Ports Authority* and its progeny — despite the use of the broad term "tort" in *Ports Authority's* discussion of the economic loss rule — have been limited in their application to merely barring negligence claims." 795 S.E.2d at 258. The Court of Appeals expressly held that the fraud claim raised by the plaintiff in *Bradley Woodcraft* was not barred by the economic loss doctrine:

> *Ports Authority* and analogous cases applying the economic loss rule are limited in scope to claims for negligence and have never applied the doctrine to claims for fraud brought contemporaneously with claims for breach of contract. Therefore, we hold that . . . while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, "[t]he law is, in fact, to the contrary: a plaintiff may assert both claims[.]"

*Id.* at 259 (quoting *Jones v. Harrelson & Smith Contractors*, LLC, 194 N.C. App. 203, 215, 670 S.E.2d 242, 250 (2008), *aff'd per curiam*, 363 N.C. 371, 677 S.E.2d 453 (2009)).

28.    Defendants argue that the holding in *Bradley Woodcraft* should not be applied to Plaintiff's fraud claim because a fraud claim that survives the economic loss doctrine must arise from and independent duty, and Plaintiff has failed to allege an independent duty owed by Vining and Corkum to Plaintiff separate from the parties' contractual obligations. The Court is not inclined, in the absence of further guidance from our appellate courts, to read *Bradley Woodcraft* in such a limited fashion. *Bradley Woodcraft* contains no discussion of any independent duty requirement.  It simply holds that the economic loss doctrine is not a bar to a fraud claim. Accordingly, Defendants' argument that Plaintiff's claim for fraud is barred by the economic loss rule is denied on the basis of *Bradley Woodcraft.*

29.    The Court concludes, however, that *Bradley Woodcraft* does not apply to Plaintiff's claim for negligent misrepresentation, and that claim grounded in negligence, is barred by the economic loss doctrine.[3] Plaintiff has not alleged any facts that would support a duty owed to him outside of the Defendants' obligations under the Employment Agreement or the Economic Interest Agreement. Accordingly, Defendants' Motion for Judgment as to Plaintiff's claim for negligent misrepresentation should be GRANTED.

B. *Defendants' challenge to the sufficiency of the fraud allegations in the 2016 Complaint.*

30.    Defendants next argue that Plaintiff's claim for fraud should be dismissed for failure to state a claim for relief. Defendants contend that Plaintiff has

---

[3] In his brief, Plaintiff makes no argument in opposition to Defendants' argument that the economic loss doctrine bars his negligent misrepresentation claim.

not adequately alleged justifiable reliance and has not alleged that Defendants made a false representation or a concealment of a material fact. (Defs.' Br. Supp. Mot. Judgment 9–11.)

31.     "To state a claim for fraud, the complainant must allege with particularity: (1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (citing *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 902–03 (1988)). The particularity requirement is "satisfied by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). "Malice, intent, knowledge, and other condition of mind . . . may be averred generally." G.S. § 1A-1, Rule 9(b).

32.     Plaintiff alleges that he "chose not to resign but agreed to continue working for Landquest in reliance upon" the promises of Vining and Corkum to eventually pay the full amount of salary and distribution of profits due to Holcomb, and to make the necessary tax withholdings from all salary payments due. (Compl. ¶¶ 18, 20–21, 23, 24–25, 33.) In describing the false statements, Plaintiff provides, within the month, when the alleged representations were made and identifies Vining

and Corkum as the speakers. Plaintiff alleges that at the time they made the representations "Vining and Corkum had no intention of paying Plaintiff the promised amounts and thus knew that such statements were false." (Compl. ¶ 33.) Although Plaintiff does not allege the specific locations at which these misrepresentations were made, he argues that "the Court can reasonably infer that those statements were made in the workplace during the course of Plaintiff's employment." (Pl.'s Br. Opp. Mot. Judgment 13.) While the allegations are threadbare, the Court believes Plaintiff has adequately pleaded that Vining and Corkum made the fraudulent misrepresentations, and the time, place, and content of the alleged misrepresentations.

33. Defendants argue that Plaintiff cannot claim to have relied on Vining's and Corkum's alleged representations in deciding to continue his employment with Landquest because he had already "agreed to work at Landquest … when he signed the 2008 Employment Agreement." (Defs.' Br. Supp. Mot. Judgment 9–10.) The Employment Agreement, however, was an at-will agreement terminable by Plaintiff at any time. Plaintiff has alleged that he relied on Vining's and Corkum's representations that Plaintiff would be paid his fully salary and profit distributions in deciding to continue his employment with Landquest. Plaintiff has sufficiently alleged justifiable reliance.

34. Finally, Defendants contend that the merger and amendment clauses of the Employment Agreement bar Plaintiff from relying on the oral representations made by Vining and Corkum. (Defs.' Br. Supp. Mot. Judgment 10.) The merger clause

in the Employment Agreement provides that it contains "the entire agreement and understanding" between the parties, supersedes any prior agreements and understanding, and that "any representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force and effect." (Empl. Agreement § 16.) The Employment Agreement also provides that "[n]o change or modification of the Agreement shall be valid or binding unless in writing and signed by the party intended to be bound." (Empl. Agreement § 13.)

35. The Court is not persuaded that the merger and amendment provisions of the Employment Agreement are applicable to these claims. First, the merger clause clearly was intended to foreclose reliance on representations that preceded the Employment Agreement and were not encompassed therein, not to representations made after the Agreement was executed.

36. Second, to the extent Plaintiff claims that Vining and Corkum represented that Landquest would eventually pay Plaintiff his full salary and properly account for tax withholdings from that salary, the representations were not modifications to the terms of the Employment Agreement, but rather assurances that Landquest would comply with its obligations under the Agreement. Those representations were not required to be in writing. Similarly, the representations regarding payment of distributions of profits under the Economic Interest Agreement were simply statements of Landquest's intention to comply with the terms of that Agreement.

37. The Court concludes that the 2016 Complaint sufficiently states a claim for fraud to survive Defendants' motion pursuant to Rule 12(c).

C. *Defendants' Rule 9(b) challenge to 2015 Complaint.*

38. Defendants seek dismissal of Plaintiff's claim for fraud on the grounds that it is barred by the three-year statute of limitations in G.S. §1-52(9). (Defs.' Br. Supp. Mot. Judgment 11—12.) Defendants contend that Plaintiff's claim accrued no later than March 11, 2013, the date Landquest terminated him. Defendants argue that because Plaintiff did not file the 2016 Complaint until August 12, 2016, his claim is time-barred. (Defs.' Br. Supp. Mot. Judgment 11.)

39. Plaintiff contends that the fraud claim is timely filed pursuant to the "savings provision" of Rule 41(a). Rule 41(a) provides that when a plaintiff takes a voluntary dismissal without prejudice of a claim that was filed within the applicable statute of limitations, "a new action based on the same claim may be commenced within one year after such dismissal . . . ." G.S. § 1A-1, Rule 41(a)(1). Plaintiff filed the 2015 Complaint against Defendants on May 15, 2015, within the three-year statute of limitations applicable to fraud claims. Plaintiff voluntarily dismissed the 2015 Complaint on August 17, 2015, and filed the 2016 Complaint on August 12, 2016, within the one year provided for re-filing his claim.

40. Defendants argue, however, that Plaintiff is not entitled to the one-year "savings provision" in Rule 41(a)(1) because the 2015 Complaint failed to sufficiently plead a claim for fraud in compliance with the particularity requirements of Rule 9(b). Defendants rely on *Murphy v. Hinton*, 773 S.E.2d 355, 2015 N.C. App. LEXIS 571

(2015). In *Murphy*, the Court of Appeals held that the plaintiff was not entitled to the benefit of the one-year savings provision because the plaintiff's initial complaint did not allege a claim for negligence under Rule 8. The Court of Appeals summarized the law as follows:

> Ordinarily, when a plaintiff voluntarily dismisses her complaint under Rule 41(a)(1), "a new action based on the same claim may be commenced within one year after such dismissal." N.C. R. Civ. P. 41(a)(1) (2013). As a result, "[i]f the action was originally commenced within the period of the applicable statute of limitations, it may be recommenced within one year after the dismissal, even though the base period may have expired in the interim." *Brisson v. Santoriello*, 351 N.C. 589, 594, 528 S.E.2d 568, 571 (2000).
>
> But this one-year extension of the time for filing only applies if the complaint properly states a claim for relief. Our Supreme Court has held that "Rule 41(a)(1) must be applied in conjunction with the rules for drafting and certification of pleadings." *Estrada v. Burnham*, 316 N.C. 318, 322, 341 S.E.2d 538, 541 (1986). Thus, "in order for a timely filed complaint to toll the statute of limitations and provide the basis for a one-year 'extension' by way of a Rule 41(a)(1) voluntary dismissal without prejudice, the complaint must conform *in all respects* to the rules of pleading." *Id.* at 323, 341 S.E.2d at 542.

*Id.* at 358, 2015 N.C. App. LEXIS 571, at *6–7. Accordingly, in *Murphy* the Court of Appeals held "that to benefit from the one-year filing extension provided in Rule 41(a), the initial complaint must conform in all respects to the rules of pleading contained in Rules 8, 9, 10 and 11 of the North Carolina Rules of Civil Procedure." *Id.* at 359, 2015 N.C. App. LEXIS 571, at *9.

41. Plaintiff concedes that if the one-year savings provision does not apply, his claims for fraud and misrepresentation are barred because the statute of

limitations expired on March 11, 2016. (Pl.'s Br. Opp. Mot. Judgment 15.) Plaintiff contends, however, that the 2015 Complaint, which was filed on May 15, 2015, complied with the pleading requirements of Rule 9(b).

42. Rule 9(b) requires that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." G.S. § 1A-1, Rule 9(b). However, "there is no requirement that any precise formula be followed or that any certain language be used." *Carter v. Roberts*, 78 N.C. App. 511, 513, 337 S.E.2d 126, 128 (1985). "A requirement of specificity is not a requirement of perfect and complete specificity." *Hudgins v. Wagoner*, 204 N.C. App. 480, 487, 694 S.E.2d 436, 443 (2010).

43. The Court concludes that the 2015 Complaint narrowly satisfies the particularity requirement of Rule 9(b), and therefore Plaintiff's fraud claim is not barred by the holding in *Murphy*. In the 2015 Complaint, Plaintiff identified Vining and Corkum as the individuals who made the allegedly fraudulent representations. (2015 Compl. ¶¶ 12, 18, 19, 21.) Plaintiff also provided the substance of the allegedly false representations; namely, that he would be paid all salary and profit distributions he was owed. (*Id.*) In the 2015 Complaint, Plaintiff alleged that Vining and Corkum made the fraudulent representations in "late 2009," "October 2012," "January 2013," and "June of 2013." (2015 Compl. ¶¶ 11–12, 18, 19, 21.) With regard to the location of the alleged representations, Plaintiff alleged that Landquest had offices in Raleigh, North Carolina, and that Vining and Corkum are residents of Wake County, North Carolina. (2015 Compl. ¶¶ 2, 4, 5.) The allegations in the 2015

Complaint, considered collectively, were minimally sufficient to satisfy Rule 9(b). *See Gillespie v. Majestic Transp., Inc.*, 2016 NCBC LEXIS 69, at \*29–31 (N.C. Super. Ct. Sept. 9, 2016)

D. *Defendants' challenge to individual liability of Vining and Corkum.*

44. Finally, Defendants argue that Vining and Corkum cannot be held liable individually since Plaintiff alleges that they made the fraudulent representations as agents of Landquest. (Defs.' Br. Supp. Mot. Judgment 13; Compl. ¶¶ 34, 43.) Defendants' argument is without merit.

45. In North Carolina,

> [i]t is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation. *Palomino Mills, Inc. v. Davidson Mills Corp.*, 230 N.C. 286, 52 S.E.2d 915 (1949); *see also Esteel Co. v. Goodman*, 82 N.C. App. 692, 348 S.E.2d 153 (1986), *disc. rev. denied*, 318 N.C. 693, 351 S.E.2d 745 (1987) (An officer of a corporation who commits a tort is individually liable for that tort, even though acting on behalf of the corporation in committing the act.). Furthermore, the potential for corporate liability, in addition to individual liability, does not shield the individual tortfeasor from liability. Rather, it provides the injured party a choice as to which party to hold liable for the tort. *Palomino Mills, supra* at 292, 52 S.E.2d at 919.

*Strang v. Hollowell*, 97 N.C. App. 316, 318–19, 387 S.E.2d 664, 666 (1990); *see also White v. Collins Bldg., Inc.*, 209 N.C. App. 48, 51–53, 704 S.E.2d 307, 310 (2011).

46. Accordingly, Defendants' Motion for Judgment as to Plaintiff's fraud claim should be DENIED.

THEREFORE IT IS ORDERED that the Motion for Judgment is GRANTED, in part, and DENIED, in part, as follows:

1.     Defendants' Motion for Judgment as to Plaintiff's claim for negligent misrepresentation is GRANTED, and that claim is DISMISSED.

2.     Defendants' Motion for Judgment as to Plaintiff's claim for fraud is DENIED.

This the 21st day of April, 2017.


　　　　　　　　　　　　　 /s/ Gregory P. McGuire
　　　　　　　　　　　　　Gregory P. McGuire
　　　　　　　　　　　　　Special Superior Court Judge
　　　　　　　　　　　　　 for Complex Business Cases